SHIELD CO., Inc., v. CARTWRIGHT et al.

No. 14523.

Court of Civil Appeals of Texas.
Fort Worth.

May 14, 1943.

Rehearing Denied June 11, 1943.

Richard Owens, of Fort Worth, for appellant.

Geo. M. Hopkins, of Denton, for appellees Roy A. Cartwright et al.

Melvin F. Adler, of Fort Worth, for intervenor.

McDONALD, Chief Justice.

This suit was instituted by The Shield Co., Inc., a wholesale concern, against Roy A. Cartwright and Wm. M. Cartwright, who at the time were conducting a retail business under the name of Cartwright Home and Auto Supply Company. In its petition, The Shield Company alleges that it had theretofore sold certain stoves and certain radios to the defendants on credit, and that the sale of such merchandise on credit was induced by certain fraudulent representations made to The Shield Com-

pany's salesman by Roy A. Cartwright on behalf of both defendants. Plaintiff sought to rescind the sales so made, and to recover the title and possession of the merchandise, or the value of such of it as the Cartwrights had disposed of. On February 12, 1942, the day the suit was filed, the plaintiff caused certain of the merchandise to be seized by virtue of a writ of sequestration. The officer who levied the writ delivered the merchandise so seized to the plaintiff, on the same day, and the plaintiff in turn, on said date of February 12th, placed the merchandise in its stock and appropriated the merchandise to its own use.

On February 19, 1942, the Cartwrights filed their voluntary petition in bankruptcy, and on the same day they were adjudged bankrupts by decree of the United States District Court for the Northern District of Texas. Ben M. Gilbert was appointed trustee in bankruptcy.

The Cartwrights filed a plea in abatement in the present suit, based upon the bankruptcy proceedings, disclaiming any interest in the property in question, saying that the title thereto had passed to the trustee. They also answered upon the merits, denying generally the allegations of plaintiff's petition, specially denying the charges of fraud, and further defending against any personal liability by reason of the bankruptcy proceedings.

The trustee in bankruptcy, Ben M. Gilbert, intervened, denying generally the allegations in plaintiff's petition, denying the right of plaintiff to rescind the sales of merchandise, and alleging that the intervenor was entitled to the title and possession of the property, or, in the event it should develop that plaintiff had converted same, that intervenor was entitled to recover the highest market value of the converted property between the time of the conversion and the time of the trial.

Plaintiff's petition, and that of the intervenor, each contains a prayer for general relief. The transcript before us does not show any answer by the plaintiff to the petition filed by the intervening trustee.

Trial was had before a jury. The verdict, consisting of answers to special issues, is as follows: (1) On December 10, 1941, when a representative of the plaintiff took the order for the goods in controversy from the defendant Roy A. Cartwright, said Roy A. Cartwright did not represent to plaintiff's representative that the Cartwright business was solvent. (1a) The defendants were not solvent on December 10, 1941. (2) At the time Roy A. Cartwright ordered the goods, he in good faith believed that he would be able to pay for them. (3) At the time the defendants purchased the goods from plaintiff, they reasonably expected to pay for them within the agreed time. (4) Not answered. (5) Plaintiff's credit man obtained information independent of any representations by Roy A. Cartwright concerning defendants' solvency and the advisability of selling said goods on credit to the defendants. (6) Plaintiff, in filling defendants' orders, acted solely upon the information obtained from others than Roy A. Cartwright. (7) Roy A. Cartwright, at the time he ordered the merchandise in controversy, in good faith intended to pay for the same.

Upon the verdict, and upon findings of the court, judgment was rendered in substance as follows: The judgment finds that plaintiff on February 12, 1942, converted radios of the defendants of the value of $455.40, and renders judgment for such amount against the plaintiff and in favor of the intervenor, the trustee in bankruptcy, as successor in interest of the defendants, together with interest thereon at the rate of six per cent per annum from February 12, 1942. The judgment then finds that the purchase price of the radios has not been paid, and renders judgment in favor of plaintiff against the defendants Roy A. Cartwright and Wm. M. Cartwright, jointly and severally, for $733.05, the amount of the purchase price so found to be unpaid. The judgment then decrees that the judgment of plaintiff against the defendants shall not be allowed as an offset to the judgment of the intervenor against the plaintiff. The judgment finds that the plaintiff is entitled to the proceeds of sales of the stoves in controversy, and "that the defendants are entitled to credit thereon on their purchase contract of said ranges with the plaintiff", and the judgment then decrees that the plaintiff recover of and from the defendants and the intervenor the proceeds from the sale of such ranges, which the judgment finds was the sum of $336, and decrees such sum to be the property of the plaintiff.

All of the parties filed motions for new trial. The plaintiff filed an appeal bond, and presents certain points of error in its

brief, and both the defendants and the intervenor present cross-points of error in their respective briefs.

First to be considered will be the points of error presented by The Shield Company.

■ The Shield Company's first point of error concerns the exclusion from evidence of a certain pleading filed by the trustee in the bankruptcy proceedings. Upon the trial of the present case, The Shield Company alleged and undertook to prove that the Cartwrights were guilty of such fraud in the purchase of the merchandise as would entitle The Shield Company to rescind the sale. The trustee in bankruptcy took the position that there was no such fraud, and that therefore the title to the goods was in the Cartwrights on the date of the adjudication of bankruptcy. The Shield Company offered in evidence, as an admission by the trustee against interest, a pleading filed by the trustee in the bankruptcy court objecting to the discharge of the Cartwrights in bankruptcy on the ground that on or about the 23rd day of January, 1941, the bankrupts, for the purpose of obtaining merchandise upon credit from their creditors, acting by and through their employee, made a statement in writing to Dun & Bradstreet, Inc., which was materially false in that such statement recited that the bankrupts had no liabilities, whereas in truth and fact their liabilities at the time of the statement were in excess of one thousand dollars. The court refused to admit this pleading of the trustee. The trustee then offered a copy of a letter written by the trustee to the attorney for the Cartwrights in which he stated that he was filing said pleading because he had been requested to do so by an attorney for some of the creditors.

■ We are of opinion that there was no error in excluding the pleading in question. The theory underlying the admissibility of declarations against interest is that a person is not likely to make a statement of fact against his own interest unless it is true. Such declarations are not admissible when they are mere conclusions, or when they are based upon hearsay. 31 C.J.S., Evidence, § 272, p. 1025; 17 Tex.Jur. 543; Reynolds v. Texas Iron Works Sales Corporation, Tex.Civ.App., 72 S.W.2d 299; Tinker v. Yellow Cab Co., Tex.Civ.App., 74 S.W.2d 521, writ of error dismissed. And such declarations have often been held inadmissible when made by one acting in a fiduciary capacity, or as a public official. See 31 C.J.S., Evidence, § 367, p. 1148, and 17 Tex.Jur. 548, for statements of the rules applicable in such situations. Here the trustee was obligated by law to object to the discharge of the bankrupts if requested to do so by the creditors. His pleading may have been based upon hearsay, and there is nothing in it directly connecting the fraud therein charged with the sales made by The Shield Company. It was not such a declaration of fact as should have been revealed to the jury in the present case.

■ Under its second point of error, The Shield Company contends that the trial court should have sustained its motion for judgment non obstante veredicto, on the ground that the evidence shows without dispute that the sale of the merchandise was induced by the fraudulent representations of the defendants. About December 10, 1941, plaintiff's salesman, R. Q. McFarland, called upon the Cartwrights at their place of business in Arlington, and talked with Roy A. Cartwright about selling them some merchandise. McFarland testified that Cartwright said that they had been very successful in their business operations, that they paid their creditors when the accounts became due, and that they would pay plaintiff on the regular thirty day terms, and within time to obtain a discount for prompt payment. Cartwright gave McFarland some credit references. The purchases, aggregating $1,103.40, were made during the period from December 10, 1941, to January 29, 1942. To prove the fraud, plaintiff also relied upon certain statements made to Dun and Bradstreet, a commercial credit agency. Cartwright testified that he told McFarland that he hoped to discount the bills, especially if he should have a nice Christmas business. He denied having said that he would pay for the merchandise within thirty days. He testified that one of the statements given to the commercial agency was prepared by an employee, without the knowledge of or authority from the Cartwrights. If Cartwright's testimony be accepted as true, his statements could hardly be classed as representations of fact, but rather as expressions of what he hoped to do. It also appears that the plaintiff received reports from some of the references given by Cartwright which were unfavorable, one of the references reporting that the Cartwrights were 240

days behind in payment on account. The Cartwrights had been making large purchases from one creditor who cut them off in the month of February, 1942. There also is testimony concerning the change of conditions in their business due to the beginning of the war in December of 1941. Considering, as we must do, only the testimony which tends to support the verdict of the jury, and not that to the contrary, we cannot say that judgment should have been rendered notwithstanding the verdict. The Shield Company cites several decisions of the courts, but we notice that in all but perhaps one of them the jury or the trial court, as the case may have been, found in favor of the party charging fraud, and we further observe that the holdings in the cases cited are for the most part that the issue of fraud was one of fact for the jury to decide. The law, as announced in such decisions, is that the seller who undertakes to rescind the sale for fraud has the burden of proving either that the purchaser ordered the merchandise with the intent not to pay for it, or that he made fraudulent representations which the seller relied upon. And mere knowledge on the part of the purchaser that he is insolvent, or that his liabilities exceed his assets, does not make a case of fraud, in the absence of inquiry made by the seller, and false answer given by the purchaser. A mere failure of the purchaser to disclose his condition does not amount to fraud. The legal questions so presented have been discussed at length in several opinions, and we shall refer to them rather than repeat what is said in them. Gainesville Nat. Bank v. Bamberger, 77 Tex. 48, 13 S.W. 959, 19 Am. St.Rep. 738; Morrison v. Adoue, 76 Tex. 255, 13 S.W. 166; Lowdon v. Fisk, Tex. Civ.App., 27 S.W. 180; Strickland v. Willis, Tex.Civ.App., 43 S.W. 602; Boaz v. Coulter Mfg. Co., Tex.Civ.App., 40 S.W. 866; B. F. Avery & Sons v. Dickson, Tex. Civ.App., 49 S.W. 662; Slayden-Kirksey Woolen Mills v. Weber, 46 Tex.Civ.App. 433, 102 S.W. 471.

■ Under its third point of error, The Shield Company contends that it should have been allowed the amount of the purchase price of the radios which was unpaid at the time of the trial as an offset against the judgment against it for the conversion of some of the radios. The contention is based upon the provision of section 68, sub. a of the Bankruptcy Act, as amended June 22, 1938, c. 575, § 1, 52

Stat. 878, 11 U.S.C.A. § 108, sub. a, which reads as follows: "(a) In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

If for no other reason, the setoff cannot be allowed because there is no pleading to support it. As has been said, The Shield Company's petition seeks only the recovery of the merchandise sold, or the value of such as may have been disposed of by the Cartwrights. The Shield Company filed no pleading in response to the plea in intervention filed by the trustee. Neither the trustee nor his claim for damages for conversion of the property is referred to in The Shield Company's pleadings. The Shield Company contends here that its prayer for general relief is sufficient to entitle it to the setoff, but it is to be remembered that The Shield Company's pleadings are directed against the Cartwrights only, and in no way against the trustee. There is nothing in our present rules of procedure which indicates to us that the setoff can be allowed in the absence of a pleading therefor. In fact, Rule 47 appears to require that such a claim must be pleaded.

We next consider the points of error presented by the trustee.

■ The first to be discussed is his counter point No. 6, under which he contends that he should have had judgment for the retail price of the radios converted by The Shield Company. The trial court's judgment finds in substance that the value of the converted radios was $455.40, and renders judgment for such amount. There was no testimony that the retail prices represented their value, and had there been, the finding of the trial court that the radios were worth a lesser amount in bulk would be amply supported by the evidence. See cases cited in footnote in 25 C.J.S., Damages, § 88, on page 628, and also Tucker v. Hamlin, 60 Tex. 171; Needham Piano & Organ Company v. Hollingsworth, 91 Tex. 49, 40 S.W. 787; and Quanah, A. & P. R. Co. v. Novit, Tex. Civ.App., 199 S.W. 496, as examples of the many cases which have announced the rule to be as stated by Chief Judge Gaines in the Needham Piano case: "The value at which a stock of goods may be sold at retail, standing alone, * * * does not afford any sufficient basis for

determining their market value. The market value is what the goods could have been promptly sold for in bulk or in convenient lots." While the reason for such a rule is obvious, it is stated in full in the decisions cited.

 In his counter point No. 8, the trustee contends that he should have had judgment for conversion of certain stoves, or ranges, which were seized by the officer levying the writ of sequestration, and thereafter appropriated by The Shield Company. These stoves, or ranges, were sold upon what is referred to as a floor plan, or upon trust receipts. The facts of the present case, with respect to the sale of the stoves, are similar to those involved in Commercial Credit Co. v. Schlegel-Storseth Motor Co., Tex.Comm.App., 23 S.W.2d 702, and C. I. T. Corporation v. Haynie, Tex.Civ.App., 135 S.W.2d 618. The point of error is overruled upon authority of those decisions.

What we have said disposes of all other points of error presented by the trustee.

The Cartwrights, in their appeal, complain of the entry of judgment against them, in favor of The Shield Company, for the sum of $733.05, being the purchase price of the radios involved less a small credit. Both by plea in abatement and by answer upon the merits, the Cartwrights interposed as a defense the adjudication in bankruptcy.

The Bankruptcy Act, § 11, as amended in 1938, 11 U.S.C.A. § 29, requires that a suit which is founded upon a claim from which a discharge would be a release, and which is pending against a person at the time of the filing of a petition by or against him, shall be stayed until an adjudication or the dismissal of the petition. If such person is adjudged a bankrupt, the action may be further stayed until the question of his discharge is determined. The rule is thus stated in 8 C.J.S., Bankruptcy, § 491, p. 1366: "The granting of a stay is discretionary after the adjudication of bankruptcy. However, the granting of a stay of suits on dischargeable claims until after the bankruptcy petition is dismissed or there is an adjudication of bankruptcy is not only proper, but mandatory, provided a proper application is made. Although, as previously stated, the granting of a stay after adjudication is discretionary, a stay will ordinarily be granted, provided a proper application therefor is made and the suit

is on a dischargeable claim; but in some cases it is proper to refuse a stay or to grant it only in part."

The present suit concerns principally the title to property which did not come into the possession of the bankruptcy court. It was begun before the filing of the bankruptcy petition. Judgment was rendered after the adjudication in bankruptcy. If and when the bankrupts are discharged, it will be proper for them to make application for a permanent stay of execution, or, in the meantime, it will be proper for the bankrupts to make application for a temporary stay of execution. The state court having acquired jurisdiction to render judgment as to the title and possession of the property involved, it was no abuse of discretion for the trial court to render the personal judgment against the Cartwrights, it being subject to their right to apply for a stay of execution as above indicated. 8 C.J.S., Bankruptcy, § 491, p. 1369.

The judgment of the trial court is affirmed.