**ASSOCIATED SAWMILLS, INC.,**
Appellant,

v.

**L. A. PETERSON et al., Appellees.**

No. 16156.

Court of Civil Appeals of Texas.

Dallas.

March 22, 1963.

Palmer & Palmer and Walter N. Vernon, Dallas, for appellant.

Gragg, Storey & Griffith, Dallas, for appellees.

WILLIAMS, Justice.

L. A. Peterson, W. A. Brannon and B. R. Brannon, brought this suit against Don Cameron Lumber Company, Interstate Lumber Company, Associated Sawmills, Inc., and James H. Harper, seeking to cancel and cause to be removed as a cloud on the title to real estate certain materialmen's liens which had been filed by defendants individually against L. A. Peterson, as the result of delivery to and subsequent nonpayment by one Guy LaRue of various building materials for an apartment project being constructed by plaintiffs on the real estate in question. The defendants answered, denying that the liens should be cancelled, and, by counterclaim, sought to establish the validity of and to enforce said liens. Following a jury trial the court submitted the case upon special issues and based upon the answer of the jury to these issues the trial court rendered judgment for the plaintiffs and cross-defendants canceling the liens and removing the cloud from title. The defendant Associated Sawmills is the only defendant that appeals from such judgment.

■ At the outset we are confronted with a complaint by appellees concerning the validity of the statement of facts filed herein by appellant. Appellees contend that they had no opportunity to examine the statement of facts prior to its filing; that it was not approved by appellees' counsel and therefore no valid statement of facts exists. Rule 404, Texas Rules of Civil Procedure provides that all motions relating to informalities in the matter of bringing a case into court shall be filed in this court within thirty days after filing of the transcript, otherwise, the objection shall be considered as waived. Appellees filed no such motion in this court, being content to raise the question for the first time in its brief filed long after the thirty day period referred to in Rule 404, T.R.C.P. Accordingly, any objection by appellees to the sufficiency of the statement of facts is waived. Looney v. Wing, Civ.App., 195 S.W.2d 557; Pacific Fire Ins. Co. v. Smith, 145 Tex. 482, 199 S.W.2d 486.

We have carefully considered this entire record in the light of appellant's points of error, and finding no reversible error reflected therein, we affirm the judgment.

■ In its original brief appellant's first point was: "The court erred in overruling appellant's motion for judgment non obstante veredicto." Appellees objected to our consideration of this point, contending same to be too general as well as multifarious. The point fails to comply with Rule 418, T. R.C.P. and may not be considered. Tindall

v. Tacconelly, Tex.Civ.App., 328 S.W.2d 909.

Appellant, realizing the inadequacy of its point, during oral argument before this court requested leave, pursuant to Rule 431, T.R.C.P., to withdraw its original point No. 1 and to substitute therefor eight substitute points of error. We granted permission to appellant to file its amended brief. Rule 431, T.R.C.P.; Minneapolis-Moline Co. v. Purser, Tex.Civ.App., 361 S.W.2d 239.

By its substituted points one through eight, inclusive, appellant says that the trial court erred in overruling appellant's motion for judgment non obstante veredicto because (1) there was no evidence to support the jury's findings to special issues Nos. 1, 2, 7 and 8, and (2) that the jury's answers to special issues Nos. 1, 2, 7 and 8 are contrary to the great weight and preponderance of the evidence.

■■■ We have considered said substituted points Nos. 1 through 8, inclusive, and find that same are without merit and must be overruled. It must be noted that all of these substituted points purportedly relate to an order overruling the motion for judgment non obstante veredicto and, of necessity must constitute "no evidence" points of error. Rule 301, T.R.C.P. provides that the trial court may render judgment non obstante veredicto "if a directed verdict would have been proper." A directed verdict is only proper where there is no evidence to support the submission of an issue to the jury. These substituted points, being "no evidence" only, preclude our consideration of the "contrary to the great weight and preponderance of the evidence" points. Also in our consideration of the "no evidence" points we weigh the question presented by considering only evidence favorable to the verdict and disregarding all other evidence. We not only give full credit to all evidence supporting such findings, but we indulge every legitimate conclusion in their favor. Todd v. Bruner, Tex.Civ.App., 349 S.W.2d 260; Shield Co.

v. Cartwright, Tex.Civ.App., 172 S.W.2d 108; Dallas Railway & Terminal Co. v. Bosher, Tex.Civ.App., 278 S.W.2d 357; Pickens v. Harrison, 151 Tex. 562, 252 S.W. 2d 575. Governed by these rules we must inspect the record to determine if there is any evidence of probative force to justify the answers of the jury to Special Issues Nos. 1, 2, 7 and 8.

Issue No. 1 inquired whether Guy LaRue was an original contractor under the contract with L. A. Peterson, to which the jury answered "yes". Issue No. 2 inquired what was the reasonable and necessary costs for plaintiffs to complete that part of the contract awarded to Guy LaRue after Guy LaRue abandoned said project, to which the jury answered "$33,277.20." By Issue No. 7 the court inquired whether L. A. Peterson, in dealing with Bill Brannon and Ben Brannon in connection with the construction of the apartment house in question, was acting as an original contractor or as an owner, to which the jury answered "as an owner". In Special Issue No. 8 the court asked if Guy LaRue was acting as a subcontractor under his contract with L. A. Peterson, to which the jury answered "no".

A statement is necessary. L. A. Peterson, W. A. Brannon, and B. R. Brannon entered into an oral agreement to build an apartment house in Dallas, Texas. The land was selected and purchased, each owning one-third interest therein. The project was financed by the three by a loan of $90,000. Each agreed to contribute equally any additional sums that might be required to finish the job. Each man agreed that he would contribute his particular skill or reputation to the undertaking. Peterson testified that since he had more experience in the field of construction that he would generally watch that part of it. W. A. Brannon was to be the contractor for interior design and furnishings and B. R. Brannon was to lend his financial strength or reputation. Peterson testified that the three men were to build the building jointly but that since he had a company in operation, known as "L. A. Peterson, General Contractor", it

was agreed that the forms, the checks, and all other necessary paper work would be handled through his office. He testified that the three men spent a lot of time getting prices together, checking material prices, and checking subcontract prices with various contractors. He said that three contractors wanted to build the apartment house for them and they finally decided they would let the contract for the basic building to Guy LaRue, d/b/a Jade Construction Company. Separate contracts were to be let for the air conditioning, electrical work, and other phases of the work. Peterson entered into a written contract with Guy LaRue for the construction of the apartment house in which the said LaRue was to furnish all labor, material and equipment to perform all work necessary to complete the building, except for a certain list of exclusions, for a total price of $39,600. Peterson also entered into agreements, some oral and some written, with contractors for tile work, kitchen ranges, refrigerators, plumbing, heating and air conditioning, electrical fixtures, swimming pools, and utilities. Brannon entered into agreements with the landscaping company, with carpeting and floor covering companies, draperies and furnishings. During the progress of the work Peterson, on occasion, would, with LaRue, co-ordinate the work being done by the other contractors. Appellant supplied the materials to Guy LaRue for use in the project of a total value of $3,099.40. After the job had progressed about two months LaRue apparently suffered a mental and financial breakdown and Peterson, and the Brannons, took over the project to complete the work, all in accordance with the terms of the contract with LaRue. In order to complete the job in accordance with the plans and specifications, it was necessary for appellees to expend an additional sum of $33,277.20, being $15,069.25 in excess of the original contract price with LaRue. When appellant discovered that LaRue would probably not pay for the materials it had supplied, demand was made upon L. A. Peterson only, and

eventually a materialmen's lien was filed against the property. At the time of the default and abandonment by LaRue, appellees had no knowledge or notice of any unpaid bills by any parties.

It is uncontradicted in this record that Peterson and the Brannons were the owners of the property in question. The deed to the property revealing this fact was in evidence. Peterson and the Brannons were sued by appellant as owners of the property. Appellee, L. A. Peterson, testified that when he entered into the contract with LaRue, being the principal contract for the construction of the apartment house, that he acted only in the capacity of an owner and that LaRue was the general contractor. Furthermore, he testified that had he been the general contractor that he would have necessarily had a superintendent on the job to run the job and see that the materials were delivered when they were needed, and that as general contractor he would have purchased and furnished all of the materials going into the work, such being the obligation of a general contractor.

■ When we consider this record and apply the rule of our Supreme Court announced above, we are unable to say that there was no evidence of probative force to either justify the submission of the disputed issues to the jury or the answers of the jury thereto. The evidence was obviously conflicting on each of the material issues, but the jury, hearing the testimony and evaluating the witnesses, and giving the weight thereto which they were authorized and required to do, answered the issues contrary to appellant's contention. Finding, as we do, some evidence to support these answers we are unable to agree with appellant's contention that there was "no evidence" and, accordingly, overrule appellant's substituted points Nos. 1 through 8, inclusive.

By its second, third and fourth points in its original brief, appellant complains of the action of the trial court (1) in admitting into evidence appellees' exhibit No. 1, being

a contract between L. A. Peterson and Guy LaRue, because the instrument had been materially altered; (2) because, appellees' exhibit No. 1, was in conflict with defendant Don Cameron's Exhibit No. 1, due to the alteration; and (3) in overruling appellant's motion to strike the testimony of L. A. Peterson which was in conflict with appellant Don Cameron's Exhibit No. 1, since such testimony amounted to an attempt to vary the terms of said written agreement.

Appellees' Exhibit No. 1, the original of which appears in the record, is a printed form headed "Subcontract Agreement" and recites that "L. A. Peterson—General Contractor—owner, hereinafter called contractor, has agreed to perform and/or is engaged in the performance of such construction work at Marsalis & Eleventh Streets, Dallas, Texas * * *" and also says "this agreement made the 16th day of November 1959, by and between L. A. Peterson, hereinafter called contractor, and Guy E. LaRue, hereinafter called subcontractor * * *." The contract concludes with the signatures: Guy E. LaRue, d/b/a Jade Construction Company, subcontractor by Guy LaRue and L. A. Peterson, General Contractor—Owner, by L. A. Peterson." This contract provides that Guy LaRue agreed to furnish all labor, material and equipment, and perform all work necessary to complete the apartment building (except for certain exclusions to be performed by others).

Don Cameron's Exhibit No. 1, appears to be an identical copy of appellees' Exhibit No. 1, with the exception that the word "owner" is omitted in Don Cameron's Exhibit No. 1, following the name of L. A. Peterson as it appears in two places in appellees' Exhibit No. 1.

During the trial of the case L. A. Peterson identified both appellees' Exhibit No. 1 and Don Cameron's Exhibit No. 1, whereupon objection was made to plaintiff's Exhibit No. 1 because "it has a material alteration on its face". Thereupon counsel for appel-

lees stated that they would be willing to use Don Cameron's Exhibit No. 1, or either one of the instruments. The court overruled the objection to appellees' Exhibit No. 1, and it appears that both Exhibits went to the jury. At one stage of the proceedings appellant's counsel moved the court to instruct the jury to disregard the testimony of Mr. Peterson which conflicts with the Cameron Exhibit No. 1, whereupon the court said: "The testimony reveals that both of these contracts were signed at the same time; there is some variance in the contract, but I think it is up to the jury to resolve the conflict in that, so I will overrule the objection and you can have your exceptions."

Appellant's contention that the word "owner" typed in two places in appellees' Exhibit No. 1, completely destroyed such contract, as being a fatal alteration, is not tenable. The only testimony concerning this word being added to the Exhibit was from L. A. Peterson who testified that he could not say how or when the word was typed on such instrument; that he knew he did not do it himself nor did anyone do it under his direction. The court did not submit any issue to the jury concerning any such alteration. It is significant to note that the instrument contains the name of L. A. Peterson in several places but in only two places, as above recited, is the word "owner" added. In Don Cameron's Exhibit No. 1 the word "owner" does not appear at all.

■ The alteration to a written instrument, to render it void, must affect the liability of the parties, and must materially change the instrument, causing it to fail to reflect the meaning and intent of the parties to the agreement. Elder Mfg. Co. v. The Leader, Inc., Tex.Civ.App., 25 S.W.2d 274; Tyler v. Bauguss, Tex.Civ.App., 148 S.W.2d 912; Duvall v. Clark, Tex.Civ.App., 158 S.W.2d 565 and Oehler v. Scammel, Tex.Civ.App., 242 S.W.2d 403.

■ We are of the opinion that the liability of the parties under this contract

is not affected by the unexplained addition of the word "owner" following Mr. Peterson's name in two places on appellees' Exhibit No. 1. Appellant is in no position to contend that L. A. Peterson was not one of the owners of the property in question. They sued L. A. Peterson as an owner and sought to foreclose a lien on the interest which he owns in said property. L. A. Peterson was the only one of the three owners ever served with any notice of any kind prior to the filing of such affidavit in support of the materialmen's lien. This being true it cannot be said that the addition of the word "owner" constituted a material alteration to the instrument in question. Furthermore, Don Cameron's Exhibit No. 1, admitted freely by appellees was before the jury, and as stated by the court in his remark, it was for the jury to resolve any differences between the two instruments. This the jury did in its findings.

 Moreover, an alteration of an instrument which is merely "descripto personae" is not a material alteration. 3 C.J.S. Alteration of Instruments § 30, p. 939.

Finally, appellant is not a party to this contract, nor is it claiming thereunder, and therefore it is difficult to understand how appellant could be affected by such alleged alteration. 3 C.J.S. Alteration of Instruments § 17, p. 920.

Even if it could be said that the court committed error in admitting both instruments into evidence before the jury, under the circumstances here related, we cannot say that such error was such as to probably result in the rendition of an improper verdict in this case. Rule 434, T.R.C.P. Appellant's original points two, three and four are overruled.

During oral argument before this Court appellant's counsel admitted that its original points five, six and seven were fatally defective and requested us to not consider same.

The judgment of the trial court is affirmed.