SECURITY CENTRAL NATIONAL BANK, APPELLANT, *v.* WILLIAMS, APPELLEE.

(No. 76AP-435—Decided October 21, 1976.)

*Mr. Jack Lett,* for appellant.
*Messrs. Abraham & Purkey,* for appellee.

McCORMAC, J. Appellant sued appellee for $3,020.49 claimed to be due on a promissory note which the bank had received by assignment from Art Sales, Inc. Appellee answered denying the indebtedness and further denying that the bank was a holder in due course, alleging fraud as a defense.

The case was tried to the trial court who found that appellant was not a holder in due course and that appellee had a defense applicable against the bank. The court rendered a judgment in favor of appellee. From the judgment of the trial court, a timely notice of appeal was filed, setting forth the following assignments of error:

"1. The findings and decision of the court was error because it was against the pleadings and the evidence presented. More specifically, the trial court erred in its finding that appellant was not a holder in due course.

"2. The trial court erred in granting judgment for the defendant-appellee in dismissing plaintiff-appellant's complaint at plaintiff's costs.

"3. The trial court erred when it denied appellant's motion for a new trial. Appellant is the holder in due course and was entitled to a favorable judgment at the trial of these proceedings."

The assignments of error will be combined for discussion, as the sole issue presented herein is whether the bank was a holder in due course. It is clear that if the bank was not a holder in due course, that fraud and failure of consideration were established as defenses against Art Sales, Inc., which would also be applicable against the bank.

R. C. 1303.31(A) defines a holder in due course as follows:

"A holder in due course is a holder who takes the instrument:

"(1) for value; and

"(2) in good faith; and

"(3) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

The sole area of dispute in this case is whether appellant took the instrument in question in good faith. In that respect, the trial court in its ruling on a motion for a new trial, stated as follows:

"Well, now, the Court relied upon the pronouncement by our own Court of Appeals here in Franklin County, case of American Plan versus Woods. We relied upon the statement that: 'A transferee of a negotiable note does not take in "good faith" and is not a holder in due course of a note given in the sale of consumer goods where the transferee is a finance company'—in this case the bank—'involved with the seller of the goods, and which has a pervasive knowledge of factors relating to the term of the sale.'

"Now, the Court listened to the evidence and I think the Court was legitimate in drawing whatever legitimate inferences it may from the facts that was testified to and

the Court drew the inference from the facts that there was a knowledge between the seller of the goods, Mr. Skaggs, who was involved with Art Sales, Mr. Grant Reed, who was vice-president of the bank, and inferred certain facts from the fact that here were people who had invested considerable amounts of money. In this case, Mr. Williams, some three thousand some dollars for certain equipment that was utterly useless to him without the additional services of the tapes, and that there were thirty-three people who had similar contracts and notes discounted by Art Sales with the Portsmouth Bank. Every one of them found themselves in the same situation, and the Court found—and I still feel the same—that the bank was not a holder in due course. The bank acts through its employees, its agents, its vice-president, and what have you, and I find from the evidence that they had a pervasive knowledge of the factors involved in the sale of these items, that there was a connection there, in fact, and that they were not holders in due course with negotiable notes. They did not take them in good faith as required. The motion to reconsider is overruled. Motion for new trial is denied.''

Appellant contends that the trial court's finding of fact that the bank did not take the instrument by assignment in good faith is against the manifest weight of the evidence.

The facts show that Art Sales, Inc., sold equipment to appellee for making stereo tapes from master tapes for $6,039. Art Sales, Inc., promised to furnish master tapes weekly from which some 400 individual tapes could be made each week to be bought back by Art Sales, Inc., at a return to appellee of about $600 a week. Appellee purchased the equipment from Art Sales on this representation which ultimately proved to be false, only one master tape ever having been furnished. Art Sales ultimately went into bankruptcy and no recovery is possible from them.

The initial $6,039 was paid by appellee as follows: There was a cash downpayment of fifty percent or $3,018.50, and a promissory note (the one in question) was signed for the balance of $3,019.50, which with interest amounted to

$3,215.08. The note was ultimately discounted to the appellant bank for approximately $500, of which $244 was interest. Obviously, there was a substantial principal discount. There were other circumstances from which knowledge of the shaky nature of Art Sales and its business could be imputed to the bank. The note was taken by the bank with recourse. The bank credit manager admitted that the note and security agreement may have been furnished to Art Sales by a member of the bank. A vice-president of the bank who handled the Art Sales account resigned shortly after Art Sales went into bankruptcy because of the Art Sales matter and several other matters. This vice-president had presumably investigated and determined Art Sales to be a reputable company. There were 33 Art Sales notes assigned to the bank in default. The sales representative of Art Sales was a former employee of the bank.

The question then is whether these circumstances and the reasonable inferences therefrom are sufficient to permit the trial court to find that appellant did not take the note by assignment in good faith, did not become a holder in due course, and thus were susceptible to defenses that were applicable against Art Sales, Inc. R. C. 1301.01 defines good faith as "honesty in fact in the conduct or transaction concerned."

This court approved the following statement in a similar case: "* * * The basic philosophy of the holder in due course status is to encourage free negotiability of commercial paper by removing certain anxieties of one who takes the paper as an innocent purchaser knowing no reason why the paper is not as sound as its face would indicate. It would seem to follow, therefore, that the more the holder knows about the underlying transaction, and particularly the more he controls or participates or becomes involved in it, the less he fits the role of a good faith purchaser for value; the closer his relationship to the underlying agreement which is the course of the note, the less need there is for giving him the tension-free rights considered necessary in a fast-moving, credit-extending commercial world." *American Plan Corp.* v. *Woods* (1968), 16 Ohio App. 2d

1, 4. While the facts of this case differ from those in *American Plan Corp.*, the same basic principle of law is applicable here. As stated in *American Plan Corp.*, a proper balance must be struck between the commercial need for negotiability and the individual's need for relief against fraud. That balance ending in the final determination that the consumer either is or is not able to maintain a defense against the financer must be made on a case-by-case basis. If sufficient facts exist to alert a bank or financing agent to the possibility that the original deal from which an assigned note was generated was not a completely above-board transaction, the court is justified in finding that the assignee did not take the note "in good faith" and is not entitled to the protection afforded a holder in due course.

In this case the bank had a closer than usual relationship with the dealer whose paper was taken by assignment. A former employee of the bank was a sales representative of the dealer. The bank took a substantial number of notes from the dealer by assignment, taking them with recourse and at a substantial discount rate. The vice-president of the bank who handled the notes from Art Sales resigned inferentially under pressure because of the Art Sales' deal and several other matters. The bank may have provided the note and security agreement used by Art Sales, Inc. In addition the type of business appeared to be almost inherently suspect.

Thus, it cannot be said that the trial court's finding that there was a sufficient interrelationship between the dealer and the bank to prevent the bank from attaining the status of a holder in due course was against the manifest weight of the evidence.

Appellant's assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

HOLMES and WHITESIDE, JJ., concur.