CALDWELL NATIONAL
BANK, Appellant,

v.

Lois O'NEIL, et al., Appellees.

No. 08–88–00254–CV.

Court of Appeals of Texas,
El Paso.

Jan. 17, 1990.

Rehearing Overruled March 7, 1990.

Lawrence R. Scroggins, Joan E. Scroggins, Caldwell, for appellant.

Robert B. Snell, Lamesa, for appellees.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

Appellant, Caldwell National Bank, brings this appeal from a judgment in favor of Appellees, Lois O'Neil, Karen Brazier, Donna Lynd and Linda Chapman, Individually and as Independent Executors and Trustees under the will of Truman O'Neil, deceased, and Robert B. Snell, Independent Executor and Trustee under the will of Truman O'Neil, deceased, declaring void a Collateral Transfer of Note and an Owner's Consent to Pledge held by Appellant and declaring a tract of land and a deed of trust against such land, owned by Appellees in their representative capacities, free and clear of any claim by Appellant. Trial was to the court. We affirm.

In its first point of error, Appellant, Caldwell National Bank, "the Bank," asserts error in the trial court's denial of its motion to transfer the suit from Ward County to Burleson County.

The Bank has its principal place of business in Caldwell, Burleson County, Texas. Truman O'Neil and wife, Lois O'Neil, were owners of a vendor's lien note in the amount of $350,000.00, secured by a deed of trust, against a tract of land located in Ward County, containing approximately 621 acres, which they had conveyed in 1975 to Barstow Park Acres, Inc., a Texas corporation owned by the O'Neils, for development and financing purposes. At the time, they were experiencing financial difficulties. Shortly thereafter, on October 6, 1975, they signed and acknowledged a collateral transfer of the vendor's lien note described above, to the Bank, ostensibly for the purpose of borrowing $80,000.00 from the Bank in the event it was needed. At the same time, the O'Neils also signed an "Owner's Consent to Pledge" to the Bank, the name of the debtor being left in blank. The two documents were delivered to the O'Neils' son-in-law, Lawrence R. "Bob" Lynd, a bank officer at another bank, for safekeeping until such time as the loan might be needed. Unknown to the O'Neils and the Bank, Bob Lynd altered the documents and utilized them to secure two notes he had with Appellant Bank. The Bank had the collateral transfer document in its altered condition placed of record in Ward County on October 20, 1975.

Truman O'Neil died in February 1976. His will was subsequently probated in Midland County, at which time Appellees became executors and trustees under the will. In 1979, the Appellees foreclosed the deed of trust lien on the Barstow Park Acres note, the trustee's deed conveying the property to Appellees being recorded on June 20, 1979, in Ward County. In April 1986, after a number of renewals and extensions of the Lynd notes, which were in default, the Bank obtained judgment against him in Burleson County. The Bank then notified Appellees of its judgment against Lynd and its position as to the Barstow Park Acres note and deed of trust under the collateral transfer and consent to pledge documents. On July 11, 1986, the Bank made a demand on Appellees for cancellation of the trustee's deed. On September 12, 1986, Appellees filed this suit in Ward County seeking declaratory relief from the collateral transfer and consent to pledge documents and to quiet title. The Bank then filed a motion to transfer the case to Burleson County and subsequently, its counterclaim asking that the trustee's deed be declared void and cancelled. The motion to transfer was overruled.

The Bank contends that venue was neither proper nor mandatory under Sec-

tion 15.011 of the Texas Civil Practice and Remedies Code. It is the position of the Bank that Appellees brought the suit for the purpose of determining the validity of the Collateral Transfer of Note and the Owner's Consent to Pledge. Appellees counter that the filing of the collateral transfer in the records of Ward County created an encumbrance or "cloud" on their title and that the primary purpose of their suit was to quiet title by removing the encumbrance. Section 15.011 requires that "[a]ctions ... to remove encumbrances from the title to real property, or to quiet title to real property shall be brought in the county in which all or a part of the property is located." Tex.Civ.Prac. & Rem.Code sec. 15.011 (Vernon 1986). Such "clouds" on legal title include any deed, contract, judgment, lien or other instrument, not void on its face, which purports to convey any interest in or makes any charge upon the land of the true owner, the invalidity of which would require proof. *Fajkus v. First National Bank of Giddings,* 654 S.W.2d 42 (Tex.App.—Austin 1983, writ dism'd).

The plaintiff has the burden of proving that venue is maintainable in the county in which the land is located, by showing that: (1) the nature of the suit comes within the terms of exception; and (2) the land is situated in the county of suit. *Drury v. Lehmann,* 602 S.W.2d 314 (Tex.Civ.App.—San Antonio 1980, no writ); Tex.R.Civ.P. 87. Since it is undisputed that the land is located in Ward County, the sole issue is whether this suit is one to remove an encumbrance or quiet title to land. Not only did Appellees seek to remove a lien or claim against the land to which they had legal title, but the Bank by its counterclaim sought to have the trustee's deed declared void as a cloud on its equitable title.

The Bank relies on *Clingingsmith v. Cook,* 347 S.W.2d 279 (Tex.Civ.App.—Fort Worth 1961, no writ) and *Scarth v. First Bank & Trust Co.,* 711 S.W.2d 140 (Tex. App.—Amarillo 1986, no writ) in support of its position. Such reliance is misplaced. In *Clingingsmith,* the appellant, one of several defendants, was the only one to seek a change of venue and was the only one who neither held nor claimed any interest in the plaintiff's land. The court of appeals, in reversing the trial court's order overruling the plea of privilege, held that the suit as to appellant did not come within the mandatory purview of Exception 14, Tex.Rev.Civ. Stat.Ann. art. 1995 (the predecessor of Section 15.011), and he was entitled to be sued in the county of his residence. *Clingingsmith,* 347 S.W.2d at 281. In *Scarth,* the judgment of the trial court overruling appellants' motion to transfer the suit to Sherman County where the land was located was affirmed because the relief sought by appellee was a declaration that the deed of trust lien was superior to the homestead rights asserted by appellants. The Court said that "[t]he nature of the suit must be determined solely from the facts alleged in the plaintiff's petition, the rights asserted, and the relief sought. [Citations omitted]. The ultimate or dominant purpose of the suit determines whether or not it falls under section 2(a) [Article 1995, another predecessor of Section 15.011]." *Scarth,* 711 S.W.2d at 142. We agree with the trial court's determination that the dominant purpose of this suit was to quiet title by removing an encumbrance. Point of Error No. One is overruled.

In the Bank's second and third points of error, it complains that there was no evidence to support the trial court's findings that Appellees were entitled to have the Collateral Transfer of Note and the Owner's Consent to Pledge and any rights of the Bank thereunder declared null and void and cancelled. In its sixth point, the Bank avers that the court erred in overruling its motion for judgment based on the insufficiency of the evidence in support of Appellees' cause of action.

When reviewing a "no evidence" challenge, an appellate court must consider only that evidence and the reasonable inferences drawn therefrom, which when viewed in their most favorable light, sup-

port the court finding. The no evidence challenge fails if there is more than a scintilla of evidence to support the finding. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). When an "insufficient evidence" point is raised, the Court must first examine all of the evidence; *Lofton v. Texas Brine Corporation,* 720 S.W.2d 804, 805 (Tex.1986); and after considering and weighing all of the evidence, the Court may set aside a finding or verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The appellate court is not a fact finder and thus, may not pass upon the credibility of witnesses or substitute its judgment for that of the trier of fact.

The trial court made extensive findings of fact and conclusions of law, the more pertinent of which are as follows:

## FINDINGS OF FACT

1. On or about October 6, 1975, Truman and Lois O'Neil executed a Collateral Transfer of Note, by which they intended to transfer to defendant bank a $350,000 vendor's lien note and the liens, rights, titles, equities and interests securing same in order to provide a basis for future loans by the bank to themselves, which note had been executed and delivered to them by Barstow Park Acres, Inc.

2. At about the same time, the O'Neils also executed a form for an Owner's Consent to Pledge, intending same also to be used for their own benefit in reference to loans they might procure from defendant bank.

6. At or prior to the time of such delivery, the Collateral Transfer was altered, or caused to be altered, in material respects by Bob Lynd, to convert the document into a form for his own use and benefit.

7. At or prior to the time of such delivery, the form for the Owner's Consent to Pledge was completed, or caused to be completed, by Bob Lynd in a certain material respect, i.e., the filing in [sic] of his own name on the face of the document, not intended by the O'Neils.

13. The alterations and unintended completions in the documents were sufficiently obvious on the face of the documents and of sufficient materiality as to put a reasonably prudent bank officer on notice of possible irregularities and fraud in the transaction and to cause such a person to make inquiry of those who signed such documents concerning the authenticity of the documents.

14. Truman and Lois O'Neil were, at all times pertinent to defendant bank's purported reliance on said documents as security for credit extended to Bob Lynd, unaware that said documents had been converted to the use and benefit of Bob Lynd.

33. The O'Neils never sought any financing from and defendant bank never loaned any money to Truman O'Neil nor to Lois O'Neil or the other plaintiffs.

34. Neither Truman O'Neil nor Lois O'Neil nor any of the other plaintiffs were aware of the Collateral Transfer of Note in its altered form being of record in the public records of Ward County, Texas, prior to the first demand of defendant bank on the plaintiffs, by letter of January 7, 1986, to pay debts of Bob Lynd.

35. Neither Truman O'Neil nor Lois O'Neil nor any of the other plaintiffs ever did or performed any act intending thereby to ratify the Collateral Transfer of Note or the Owner's Consent to Pledge in any form.

44. Reasonable attorneys' fees for the services rendered by said attorneys and expenses through the trial of this cause would be $23,000; and in event of an appeal to the Court of Appeals would be an additional $4,000; and in event of an application for or a response to an application for writ of error to the Supreme Court of Texas, would be an additional $3,000.

## CONCLUSIONS OF LAW

1. The Collateral Transfer of Note was void from its inception.

2. The Owner's Consent to Pledge was void from its inception.

3. Defendant bank was negligent in failing to make inquiry of the O'Neils concerning the authenticity of the Collateral Transfer of Note and the Owner's Consent to Pledge.

4. Such negligence was the proximate cause of defendant bank's reliance on the Owner's Consent to Pledge and the Collateral Transfer of Note and is a defense to defendant bank's claims thereunder.

26. This is a proper case for the award of reasonable attorneys' fees, and plaintiffs are entitled to have and recover of and from defendant such reasonable attorneys' fees and expenses.

The Bank asserts a barrage of legal theories challenging nearly every finding of the trial court to support its contention that the court erred by declaring the documents null and void. These basically revolve around the contention that the evidence did not support a finding of material alteration, or if it did, the Appellees had adequate actual knowledge and constructive notice of the documents in their present form as to effectuate ratification. We disagree.

■ We first consider whether there was an alteration and if so, whether it was material. A simple alteration is a change of a writing from one form to another in a manner that does not destroy its identity, nor affect the validity of the writing. 3 Tex.Jur.3d, Alteration of Instruments, sec. 2 (1980). An alteration is material which changes the contract of any party, including the completion of an incomplete instrument otherwise than as authorized, or by changing the writing as signed, by adding to it or by removing any part of it. Tex. Bus. & Com.Code Ann. sec. 3.407(a). The test of materiality is one of law. *People's Finance Co. of Dallas v. Sabanovich*, 26 S.W.2d 187, 189 (Tex.Comm'n App.1930). A materially altered instrument is rendered

void where the liability of the parties has been affected by the change, causing it to fail to reflect the true intention of the parties. *Bowser v. Cole*, 74 Tex. 222, 11 S.W. 1131, 1133 (1889); *Laughlin v. Stephenson*, 525 S.W.2d 308 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ); *Associated Sawmills, Inc. v. Peterson*, 366 S.W.2d 844, 848 (Tex.Civ.App.—Dallas 1963, no writ); *Lowe v. Henson*, 190 S.W.2d 423 (Tex.Civ.App.—Amarillo 1945, no writ).

To be sure, the Collateral Transfer of Note with which we are here concerned is not an instrument under Chapter 3 of the Texas Business and Commerce Code, but is a security agreement under Chapter 9 of the Code. Whether an agreement has legal consequences is to be determined by provisions of the Code, if applicable; otherwise by the law of contracts and other principles of law and equity. Tex.Bus. & Com.Code Ann. sec. 1.103 and 1.201 (Vernon 1968). Applying these principles to the Collateral Transfer of Note, the record reflects that the O'Neils intended to execute this security agreement and the Owner's Consent to Pledge for the purpose of establishing a future line of credit with the Bank. They signed and delivered the documents to their son-in-law at his behest, to be delivered by him to the Bank if and when a loan was needed. There was evidence and reasonable inferences therefrom to support the findings that Lynd altered, or caused to be altered, the collateral transfer, and that he completed, or caused to be completed, the Owner's Consent to Pledge, and then delivered these documents in their changed form to secure his own old and new loans. Mrs. O'Neil testified that the documents were changed in several respects after she and her late husband had signed them, including the whiting out of their names and their replacement with "Lawrence R. Lynd, Jr." This testimony was supported by the collateral transfer itself which graphically displays her assertions. There was no evidence tending to show that the O'Neils and the Bank ever had any direct negotiations concerning any loans against

their Barstow Park Acres note and no evidence that the Bank ever attempted to communicate with the O'Neils concerning the use of the documents to secure the loans to Lynd until early in 1986. The trial judge acting as a fact finder has the right to determine the controlling facts by accepting or rejecting any part of a witness's testimony. Unless the record proves to the contrary, every reasonable presumption must be indulged in favor of his findings. *Wright v. Wright*, 699 S.W.2d 620 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.).

■ The Bank contends next that Lynd was the agent of the O'Neils, thereby resulting in ratification of his actions through actual or implied consent. The court never specifically found Lynd to be an agent of the O'Neils or the Bank because that determination has no bearing on the outcome of the case. Even if Lynd had been the agent of the O'Neils, the Bank knew or should have known that Lynd's interest became adverse to that of his alleged principals where it readily appeared that the O'Neils' note and deed of trust were being utilized by Lynd to secure his own indebtedness. It is the duty of a party dealing with an agent to ascertain not only the fact of agency, but the extent of the agent's authority. *Boucher v. City Paint & Supply, Inc.*, 398 S.W.2d 352, 356 (Tex.Civ.App.—Tyler 1966, no writ).

■ The Bank contends that since the collateral transfer was both acknowledged by the O'Neils and recorded in Ward County, it represented notice to all persons, including the O'Neils, of both the existence and the contents of the document. While a certificate of acknowledgment in due and proper form at the end of a document makes conclusive the factual content, it does not relieve a party who has participated in or had notice of a fraud. *Tompkins v. American Republics Corp.*, 248 S.W.2d 1001, 1010 (Tex.Civ.App.—Beaumont 1952, no writ). The Court found, supported by the evidence, that the alterations and completions were sufficiently ma-

terial and obvious on the face of the documents to put a reasonably prudent bank officer on notice and cause him to make inquiry of possible irregularities and fraud in the transaction. The purpose of the recording act is to give notice to those persons who have some reason to apprehend a transfer or encumbrance on property prior to their own interest, *Cox v. Clay*, 237 S.W.2d 798, 804 (Tex.Civ.App.—Amarillo 1951, writ ref'd n.r.e.), not to validate an obviously altered security agreement.

■ The Bank brings substantially the same arguments in alleging that the court erred in finding the Owner's Consent to pledge to be null and void. One difference was that the pledge was found to be completed outside the authority of the O'Neils. The O'Neils signed the pledge leaving both the debtor space and the collateral description blank. Mrs. O'Neil stated that the "debtor" was supposed to be her husband and her, not Lynd. James Smith, the Bank's current president, testified that he had seen two or three of these pledge agreements and that on none of those occasions had they been used to secure the owner's own debt. He said that they are "not normally" used for that purpose.

When a party signs a document containing blanks, entrusting it to another under instructions or an agreement to fill in the blanks in a certain manner, the party to whom the document is entrusted has a duty to fill the blanks strictly in accordance with the instructions or agreement, and, in the absence of negotiation to an innocent holder, the signing party is not bound by any terms inserted in the blanks that do not comport with his instructions or the true agreement. *First National Bank in Dallas v. Walker*, 544 S.W.2d 778, 784 (Tex. Civ.App.—Dallas 1976, no writ). The alterations, deletions and insertions made the documents so questionable as to invite inquiry. Failure to make inquiry under such circumstances amounts to an intention to remain in ignorance for fear of what an inquiry may reveal. 72 C.J.S. Pledges sec. 24.c. (1987). Where as here, a borrower

improperly pledges the securities of a third person as collateral, the lender bank does not take as a good faith purchaser when the circumstances make the transaction suspect and the bank failed to make inquiry of the owner of the securities. *Security Central National Bank v. Williams*, 52 Ohio App.2d 175, 368 N.E.2d 1264, 1266 (1976); *Irving Trust Company v. Gomez*, 550 F.Supp. 773, 776 (S.D.N.Y. 1982); *Securities & Exchange Commission v. Investors Security Corporation*, 415 F.Supp. 745, 754 (W.D.Pa.1976), *aff'd in part and vacated in part*, 560 F.2d 561 (3rd Cir.1976); 5 R. Anderson, Uniform Commercial Code sec. 3–302:31 (3rd ed. 1984).

■ The Bank next contends that even if the collateral transfer was materially altered, Appellees had notice of the document in its altered form through correspondence concerning an oil and gas lease and a recorded subordination agreement in which the Bank agreed to subordinate its lien to the lease but required royalty payments to be made jointly to the O'Neils and the Bank, and failing to take action, ratified the altered document by their silence.

Ratification occurs when one with knowledge of all material facts adopts or affirms a prior act that he had the right to repudiate but now accepts, giving it retroactive effect. *Kunkel v. Kunkel*, 515 S.W.2d 941, 948 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.). Ratification can be expressed or implied by a course of conduct, including silence, if it misleads another party to his detriment. *Diamond Paint Company of Houston v. Embry*, 525 S.W.2d 529, 535 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). However, ratification cannot occur so long as the principal is unaware of the transaction, but can occur if he retains the benefits of the transaction after acquiring knowledge of the unauthorized act of his agent. *Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex.1980). Ratification cannot occur when the third party intends to deal with the agent solely in his individual capacity. *Anderson v. Badger*, 693 S.W.2d 645, 647 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). The burden is on the party asserting ratification to show that the person charged knew of the representations charged. *Banctexas Allen Parkway v. Allied American Bank*, 694 S.W.2d 179, 181 (Tex.App.—Houston [14th Dist.] 1985, no writ).

Based on its findings of fact, the court concluded as a matter of law that the negligence of the Bank was the proximate cause of its reliance on the documents to its detriment, not the failure of Mrs. O'Neil to take action to repudiate the unauthorized use of the documents when the oil and gas lease and the subordination agreement came to her attention. Mrs. O'Neil testified that she had seen the latter documents but considered them of no consequence since they did not outwardly affect her rights in the property. The oil and gas lease requirements did not apprise the O'Neils of any outstanding loan or loans to Lynd or anyone, especially since the Bank willingly submitted to the subordination agreement without communication to the O'Neils and subsequently, waived its right to any of the royalties. The evidence supports the trial court's finding that at all pertinent times to the Bank's reliance on documents as security for the loans to Lynd, the O'Neils were unaware that Lynd had converted those documents to his own use and benefit. Accordingly, Points of Error Nos. Two, Three and Six are overruled.

In its fifth point of error, the Bank complains that the court erred by refusing to declare the trustee's deed filed by the Appellees on June 20, 1979, at the time they foreclosed under their deed of trust securing the Barstow Park Acres note, to be null and void and subject to cancellation. In support of this point, the Bank reiterates its arguments that Appellees and their attorney had actual and constructive notice of the documents as altered and completed, and therefore, had no interest in the note or the deed of trust which formed the basis for the foreclosure since the latter had

been transferred to the Bank. Having previously answered these arguments, Point of Error No. Five is overruled.

In the fourth point of error, the Bank contends that the court erred in finding that the attorney's fees requested by the Appellees were reasonable. The trial court awarded $23,000.00 in attorney's fees through trial and an additional $4,000.00 in the event the case was appealed. The Bank claims that the fees awarded for the appeal are not supported by the pleadings and that the evidence does not support the finding of reasonableness of such fees. The Bank's argument under this point does not support its claim or cite any authorities, but consists almost entirely of statements to the effect that the Appellees' attorney had been the O'Neils' attorney through the entire period covered by the lawsuit, that he had reviewed the documents pertaining to the oil and gas lease, that he had handled the 1979 foreclosure and trustee's deed while knowing of the existence of the Bank's lien claim by virtue of the recorded transfer of the note to the Bank, and that by his failure to perform as a reasonably prudent attorney, he had caused or contributed to the cause of action that arose and the litigation that followed. While there are some obvious ethical considerations that arise when an attorney who is not only a party, but also a witness, undertakes to represent himself along with the other plaintiffs, that question is neither raised nor appropriate for us to consider.

A review of the record shows that Appellees both in the body and the prayer of their second amended original petition requested an award of reasonable attorney's fees and expenses of litigation. Both the attorney for Appellees and another attorney, who qualified as an expert witness, testified concerning the details and reasonableness of the fees in question. Since the trial court has wide discretion in determining the amount and reasonableness of attorney's fees, its judgment will not be disturbed without a clear showing of abuse of that discretion. *Mack v. Moore*, 669 S.W.2d 415, 420 (Tex.App.—Houston [1st Dist.] 1984, no writ). Considering the entire record, we cannot conclude that the trial court abused his discretion in his award of attorney's fees. Point of Error No. Four is overruled.

Judgment of the trial court is affirmed.