**OEHLER et ux. v. SCAMMEL et al.**

No. 14365.

Court of Civil Appeals of Texas. Dallas.

July 6, 1951.

Rehearing Denied Sept. 21, 1951.

cellation thereof and all liens securing same. The note in question was for $9,360, dated March 27, 1946, payable in monthly installments of $90, including interest, and was given in part payment of Lot 3, Block A–2908 of Greenland Hills, an addition to the City of Dallas—property on that day conveyed by Scammel to Thomas J. Reagan and wife and W. H. Eschmann and wife. It is claimed that after its execution and without the knowledge and consent of the parties liable thereon, there was inserted in the body of above instrument the provision "In addition to the monthly payments on the Note hereinafter described and hereby secured, Makers of this Note agree to deposit monthly an amount equal to $\frac{1}{12}$th of the annual taxes and insurance premiums"; and that same was a material alteration having effect of canceling said note and liens held by the payee Scammel.

The jury found on issues submitted that the proviso just quoted relative to a deposit monthly by makers of the described note of an amount equal to $\frac{1}{12}$th of annual taxes and insurance, was inserted therein after its execution by the Reagans and Eschmanns, likewise after its assumption by Oehler; the insertion having been made by "H. C. Scammel or some person representing him." Motion was filed by Oehler for judgment on the verdict, praying for cancellation of note, together with deed of trust and vendor's lien, and for recovery of $1,436.93 paid under protest during pendency of suit; Scammel also moving for defendant's judgment notwithstanding the jury verdict. The court's final judgment was for cancellation of note without prejudice to the right of Scammel to enforce "the original purchase consideration for which the aforesaid note was given as shown by other instruments than said note, * * *." From such judgment both parties have perfected an appeal.

Dalton & Moore, Dallas, for appellants. W. F. Bane, Lee S. Bane and H. P. Edwards, all of Dallas, for appellees.

YOUNG, Justice.

This suit was filed by Chester A. Oehler and wife against H. C. Scammel charging material alteration of note (deed of trust and vendor's lien) after its execution and assumption by them, praying for can-

All relevant facts touching the foregoing controversy and issues must be first stated. The contract of sale, preliminary to the Scammel-Reagan transaction in realty, recites among other things: "And one note for the sum of $9,360.00 and payable as follows, $90.00 per Mo., including interest at the rate of 6% plus $\frac{1}{12}$ of taxes and insur-

ance." The deed of trust executed simultaneously with note carried the clause (identical with that found in the questioned note): "In addition to the monthly payments on the Note hereinafter described and hereby secured, Grantors herein agree to deposit monthly an amount equal to ¹⁄₁₂th of the annual taxes and insurance premiums"; also providing "We further covenant with said Trustee, that we will at all times, during the continuance of this trust *keep the buildings and improvements now on, or hereafter to be erected on, said premises, insured against loss by fire* and tornado to the extent insurance can be obtained thereon, *in companies acceptable to* and with loss payable to the *said Trustee,* or his successors, for the benefit of the holder or holders of said note, and deliver the policies to said Trustee, or his successors, and to pay, before the same shall become delinquent, all taxes and assessments which may be levied or assessed against said premises or any part thereof, and to pay all principal and interest payments when due on all indebtedness against the above described property, secured by superior or prior liens to those securing the note above described and hereby secured. And it is especially agreed that if the undersigned shall *fail to effect said insurance and deliver such policies,* as herein provided, *or to pay such taxes,* assessments or payments on such prior indebtedness the holder of the note hereby secured may at his option *declare the note hereby secured due and payable,* or the said insurance may be effected, and the said taxes, assessments, or payments on such prior indebtedness may be paid by the legal holder of the note secured hereby, and the sums so expended shall be a demand obligation and become a part of the debt hereby secured, and shall draw interest at the rate of ten per cent per annum from the date so expended until paid." (Italics ours.) The described property was sold by Reagan et al in September 1946 to R. H. Hay, who assumed the balance due on said $9360 note; the latter in turn selling to the Oehlers on January 29, 1947, their contract of purchase and sale likewise providing, "and the assumption of one note with an un-

paid balance of approximately $9,000.00 with interest at 6%, due and payable in monthly installments of $102.87 to H. C. Scammel, Dallas, Texas, said payments include taxes and insurance."

The note proviso for deposit monthly of ¹⁄₁₂th of the amount of taxes and insurance (charged as having been inserted after execution) appears to have been written by a different typewriter and ribbon; explained by Ed Layton, examining attorney for Dallas Title & Guaranty Company, in this wise: That the Reagan real estate transaction had been consummated in his office; that the necessary deed, deed of trust and note had theretofore been drawn at the office of the Title Company attorneys, and, upon their receipt, it was called to his attention that the particular clause was not in the note, whereupon the insertion was immediately made by his own secretary; the note and other necessary instruments then being signed by the Reagans and Eschmanns, their acknowledgments taken and deal closed.

Further evidence bearing on the plea of material alteration will be summarized: Plaintiff Oehler testified that before purchasing the property (January 1947) he inspected the note (then with First National Bank for collection) and it contained no clause requiring deposit of additional money for taxes and insurance; again examining the paper several months later at window of Mr. Lacy, the Bank teller for collection of real estate notes, said clause still not appearing therein; going to the Bank a third time between the 5th and 10th of April 1949, when the clause was found in the note; and concerning such provision (at a time when plaintiff was contending that his tender of $90 was in full of the April installment), that Lacy had stated, "It's in the note now." Mrs. Oehler testified to being with her husband on his second trip to the Bank, she reading the note, and that the provision for payment monthly of ¹⁄₁₂th taxes and insurance was not there.

The note, in evidence, shows payments beginning May 6, 1946 of $90 monthly on principal and interest and $12.87 taxes and

insurance, last credit, June 1, 1950. In the same connection Oehler testified that before purchasing, he was told by Lunsford, the real estate agent, that such would be the monthly payments, also reading the deed of trust to same effect, he having regularly tendered that amount from inception of purchase; that each month he would make the stated payment of $102.87 on notice from the Bank of amount due. He was not contending of any failure to receive full credit for all payments nor that yearly taxes had not been paid out of these monthly deposits.

John Lacy, the particular Bank teller, stated that the note had been received from Scammel for collection April 9, 1946, the record showing same to have been continuously in the Bank's possession up to April 26, 1949; that immediately upon delivery of the note for collection, a bank record was made up on yellow card of its contents for guidance in taking payments and sending notices; the information from this particular note showing a monthly payment of $90 including interest, also $8.11 taxes and $4.76 insurance; and that during above period of possession by the Bank there were no alterations, additions or changes made in and to that note. H. C. Scammel, note holder, testified that the provision for deposit of 1/12th taxes and insurance was contained in the note when it was turned over to him by the agent Lunsford about March 27, 1946 after execution by Reagan et al; that he immediately deposited it with First National Bank for collection, authorizing no one to alter or tamper with it while there; and that the note was not thereafter withdrawn from the Bank by him until the injunction hearing following plaintiff's suit. In answer to questions propounded by counsel for Oehler, Scammel stated that he might have gone to the Bank with W. F. Bane, Trustee, to look at the note during the time Oehler was attempting to place his own policy of insurance on the property as will be hereinafter related.

It should here be observed that the differences between the parties did not originate with this much-discussed note provision (whether inserted before or after execution); arising, on the other hand, from diverse constructions of the above quoted and other covenants of the 1946 deed of trust providing in part that grantors (Reagan et al) "will at all times, during the continuance of this trust keep the buildings and improvements now on, or hereafter to be erected on, said premises, insured against loss by fire and tornado to the extent insurance can be obtained thereon, in companies acceptable to and with loss payable to the said Trustee, or his successors, for the benefit of the holder or holders of said note, and deliver the policies to said Trustee, or his successors, * * *."

The fire insurance on the premises, outstanding at time of the Reagan purchase (a three-year policy), expired in March 1949; prior thereto, Oehler, at his own instance, procuring a new three-year policy and tendering it to Scammel, also making tender of only $90 to Lacy, Bank teller, on the monthly installment next maturing on the note. Scammel rejected the policy just mentioned, stating ground of unacceptability; and in a letter to Oehler called attention among other things to above quoted terms of the deed of trust and closing with the statement: "Therefore, if you have entered into a contract for insurance coverage other than the company of my designation, you will proceed to cancel the same and apply the funds that you paid therefor on the policy in the company of my choosing, which policy shall be for a term of (3) three years in accordance with the original contract on this property." On April 5, 1949 W. F. Bane, Trustee, also wrote Oehler with respect to same provisions of the deed of trust and particularly to the proviso therein that "In addition to the monthly payments on the note hereinafter described and hereby secured, grantors agree to deposit monthly an amount equal to one-twelfth (1/12) of the annual taxes and insurance premiums"; the trustee demanding on behalf of the note holder that all provisions of the deed of trust be complied with and, in event of failure to do so in a reasonable time, that "Mr. Scammel will declare all of the note due and post the property for sale."

■ It was Oehler's contention that the three-year fire policy procured by him and tendered to Scammel (still in effect at time of trial, June 1950) was in full compliance with applicable provisions of the deed of trust; and that the premium therefor should have been taken care of by Scammel out of the funds already paid in from month to month for insurance coverage. Currently with foregoing events and controversy, a material alteration of the note in question was discovered, according to Oehler, and the instant suit was filed. By way of parenthesis and obviously, Oehler's claim of right to placement of insurance, as reflected in above correspondence, is unwarranted. He knew that his deposits for more than 26 months had been credited in part to a renewal of insurance, policy for which was required to be in a company acceptable to beneficiary Scammel through agency of the trustee. This was a valid contractual provision of the deed of trust to extent of Scammel's interest in the property. Feldman v. Costa, Tex.Civ.App., 171 S.W.2d 200.

■ The same undisputed facts, it occurs to us, refute Oehler's claim of material alteration as a matter of law; his case for cancellation involving material inconsistencies and without support in the record as a whole. Oehler knew, from his deed of trust and contract of purchase, that monthly installments included a deposit of 1/12th for taxes and insurance; regularly tendering payments of $102.87 pursuant to said understanding. It is his contention that because the same proviso now appears in the note as an insertion after execution, the entire transaction must be condemned as unlawful. This does not follow from the set of facts hereinabove outlined. Even assuming an absence of the provision in question from the note on its execution, the identical language relating to taxes and insurance was contained in the deed of trust; the two instruments, executed at the same time and concerning the same property, being considered a single contract. San Antonio Real-Estate, Building & Loan Ass'n v. Stewart, 94 Tex. 441, 61 S.W. 386; Lloyds America v. Friend, Tex.Civ.App.,

91 S.W.2d 766; Rudes v. Field, 146 Tex. 133, 204 S.W.2d 5; and a stipulation or condition contained in the one instrument is effective and controlling though not found in the other, provided there be no necessary inconsistency. See also Campbell v. Nicholson, 4 Willson Civ.Cas.Ct. App. 288, 18 S.W. 135; Mazzola v. Lucia, Tex.Civ.App., 109 S.W.2d 273, writ ref. Says the Editor in 34 A.L.R. 850, citing Dodge v. Signor, 18 Tex.Civ.App. 45, 44 S.W. 926, Warren v. Osborne, Tex.Civ. App., 97 S.W. 851, Pfeuffer v. Wilderman, 1 White & W. Civ.Cas.Ct.App. § 1169: "It is held in a majority of the cases that an acceleration provision in a mortgage securing a note enters into and becomes a part of the note, so that the maturity of the note is advanced with the maturity of the mortgage, not only for the purpose of foreclosure, but for all purposes."

The requirement of a deposit monthly for taxes and insurance being admittedly an element of the obligation assumed by Oehler and becoming a part of the note, whether physically incorporated therein or not, this record fails to substantiate his charge of material alteration. "An alteration that works no change, but which leaves the terms of the contract the same as before, does not vitiate it." Wilson v. Weis, 63 Tex.Civ.App. 255, 132 S.W. 841, 842. "The law is well settled in this state that any alteration made in a written instrument, which does not materially change the instrument, making it read differently from its original provisions, and which does not cause the instrument to speak differently in legal effect from that which it spoke originally, then there is no material alteration rendering the instrument void. The validity and operation, or apparent regularity of an instrument is not affected by such a change. Commercial Credit Co. v. Giles, Tex.Civ.App., 207 S.W. 596; Clem v. Chapman, Tex.Civ.App., 262 S.W. 168." Tyler v. Bauguss, Tex.Civ.App., 148 S.W.2d 912, 916. See also Reed v. Roark, 14 Tex. 329; 3 C.J.S., Alteration of Instruments, § 19, page 924.

■ But appellee argues that the inserted clause has materially affected his con-

tract of assumption in that his property is thereby made subject to a *vendor's* lien. The contention is also overruled. Retention of vendor's lien is likewise a recital of the deed of trust, rendering it equally available to the creditor in any court action based on aforesaid mortgage.

■■ For another reason we conclude the complainant is not entitled to the relief sought. It is clear from the record that the note was in exclusive possession of First National Bank in Dallas "For collection and credit" during all material dates; and the authority of an employee or even official of this Bank to perform an act of alteration can hardly be implied from a mere agency to collect monthly installments. To "represent," as indicated by the jury issue herein, is "to speak or act with authority on behalf of another." 37 Words and Phrases, Represent, page 34. The record being wholly devoid of testimony that Bank teller Lacy was acting for defendant Scammel in any such representative capacity, the presumed alteration of note by him is to be regarded as the the act of a stranger, constituting a mere spoliation, unless subsequently ratified. 2 Am.Jur. 605; 2 Tex. Jur., p. 700; Griffin v. Shamburger, Tex. Civ.App., 262 S.W. 144; M. W. Kellogg Co. v. Houston Terminal Refining Co., D.C., 6 F.2d 313. Spoliation of an instrument will not prevent a recovery thereon in accordance with its original terms. See also Art. 342–703, Vernon's Ann.Civ.St., scope of Bank's authority as agent for collection.

In harmony with the conclusion hereinabove reached, the judgment under review, ordering cancellation of $9,360 note, is reversed and here rendered in favor of appellee H. C. Scammel; and after due credit has been given for all payments made on the note during pendency of suit, it is ordered that appellants Oehler and wife take nothing by reason of their said action.

Appellants' motion to dismiss the cross-appeal of H. C. Scammel, carried over to this date for consideration, is in all respects overruled.

Reversed and rendered in part with instructions.