**FROST NATIONAL BANK, H & H Building Interests, Inc., Jack W. Howeth, and Kenneth R. Howard, Appellants,**

v.

**Charles E. BURGE and Linda S. Burge, Appellees.**

No. 14–99–00074–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 17, 2000.

Rehearing Overruled Nov. 9, 2000.

Brian F. Antweil, John Hatchett McFarland, Steven E. Halpin, Houston, for appellants.

J.W. Beverly, Michael J. Mazzone, Houston, for appellees.

Panel consists of Justices YATES, FOWLER, and EDELMAN.

## MAJORITY OPINION

LESLIE BROCK YATES, Justice.

This appeal stems from a defaulted real estate loan. The lender, Frost National Bank, appeals from a summary judgment granted in favor of the loan's surety, Charles E. Burge, on his claims for conversion, breach of contract, and material alteration. The borrowers, H & H Building Interests, Inc., Jack W. Howeth, and Kenneth R. Howard, appeal from a separate summary judgment that was awarded in the Burges' favor on H & H's [1] counterclaims for breach of contract and contribution. For the reasons set out below, we reverse the trial court's judgment.

## I. Background

In August of 1993, Charles E. Burge and his wife, Linda S. Burge, agreed to sell a residence that they owned to H & H Building Interests, Inc., for the sum of $375,000. Jack W. Howeth is H & H's president, and Kenneth R. Howard is one of its stockholders. The Burges' residence was located at 326 Blaylock, in the City of Piney Point Village (the "Property"). H & H wanted to acquire the Property for the purpose of tearing down the existing improvements and constructing a new residence for resale on a speculative basis. Burge, a former attorney and a real estate developer, agreed to finance the entire purchase price and, in return, H & H agreed to execute two promissory notes to the Burges, one for $175,000, and another for $200,000. Pursuant to the parties' agreement, the $175,000 note was to be

payable within ninety (90) days. The $200,000 note was to be payable in one year, but it was agreed that this note would remain subordinate to the bank loan which H & H needed to finance the new home's construction. On or about September 30, 1993, Burge conveyed the Property to H & H by general warranty deed, and H & H executed and delivered the two promissory notes as agreed.

In December of 1993, H & H obtained a construction loan in the amount of $865,000 from Frost National Bank's predecessor-in-interest, National Commerce Bank (collectively, the "Bank"). As security for the loan, H & H executed a promissory note in the principal amount of $865,000 (the "Note"). As further security, Howeth and Howard executed personal guaranties, in which each agreed to be jointly and severally liable for repayment of the $865,000 loan. The loan was also secured by a "Deed of Trust and Security Agreement" which gave the Bank a lien on the Property. In addition to this security, however, the Bank requested collateral in the amount of $200,000 to further secure the loan.

In negotiating for the loan, H & H evidently agreed to use the loan's profits to pay in full both the $175,000 and the $200,000 promissory notes previously executed to the Burges. In return for such payment, Burge orally agreed to use the $200,000 note payment as the additional collateral requested by the Bank to secure the loan. Pursuant to this agreement, Burge delivered $200,000 to the Bank from proceeds that he received from H & H at the loan's December 29, 1993 closing and used it to purchase a certificate of deposit (the "CD"). Burge then signed an "Owner's Consent to Pledge" the CD (the "Pledge"), also dated December 29, 1993, as additional collateral required for the $865,000 loan. The Pledge was part of a

---

**1.** For the purpose of this opinion, Howeth, Howard, and H & H Building Interests, Inc. are referred to collectively as "H & H" where possible.

"Security Agreement–Pledge" that the Bank required H & H to sign.

After all of the loan documents had been signed by H & H and Burge, but before the Bank signed the documents, the Bank noticed a clerical error in the Note. That error incorrectly listed the Note's maturity date as December 28, 1995, instead of December 28, 1994, giving the Note two years to mature instead of one. It is undisputed by the Bank and by H & H that the Note was intended to mature after only one year, on December 28, 1994. The Bank notified Howeth that it would not fund the loan until the error was corrected. Howeth corrected the date by striking out the incorrect year and inserting the intended maturity date. Howeth then initialed the correction, and the Bank began to advance funds under the loan. Neither Howeth nor the Bank contacted Burge about the correction made to the Note's maturity date.

Under the terms of the corrected instrument, the Note matured on December 28, 1994. The Bank called Burge on January 24, 1995, to inform him that the Note "had matured." Burge also received a letter from the Bank, dated February 2, 1995, notifying him that, as surety, he would have ten days to cure any default on the loan by H & H. H & H failed to make the loan payments that were due and, in turn, defaulted on the Note. Although the Bank renewed the loan to give H & H additional time to pay, H & H was unable to make the required payments and fell into default again on April 17, 1995. In a letter dated June 5, 1995, the Bank served Burge with formal notice of H & H's default. Burge did not respond to the notice and did not cure that default. On June 20, 1995, the Bank foreclosed upon the $200,000 CD and credited that amount toward the Note's unpaid balance. On February 6, 1996, the Property was sold at a public auction to the highest bidder, the Bank, for $600,000.

## II. Procedural History

On November 29, 1995, Burge filed suit against H & H for assumpsit, subrogation, and contribution for the damages resulting from the Bank's foreclosure on the $200,000 CD.[2] In a separate action, the Bank sued Howeth and Howard, as the Note's guarantors, for the deficiency between the Property's sale price and the amount remaining due on the Note. On April 1, 1996, the Burges amended their petition in the suit against H & H to add the Bank as a defendant and to seek damages from that entity for its foreclosure on the CD. In particular, the Burges complained that the Note was materially altered by Howeth's correction to the maturity date, at the Bank's request, after Burge had already signed the Pledge. The Burges argued therefore that the Bank wrongfully converted the CD and breached its contract with them. The two lawsuits were consolidated on August 9, 1996.

The Bank filed a motion for summary judgment on the Burges' claims, and the Burges filed a cross-motion for summary judgment. At a hearing on May 12, 1997, the trial court denied the Bank's motion and entered an "Interlocutory Judgment Order Granting Summary Judgment" in the Burges' favor [the "Interlocutory Judgment"] without stating the grounds for that decision. In the Interlocutory Judgment, the trial court ordered the Bank to pay $200,000 in damages to the Burges, plus pre- and post-judgment interest, reasonable attorneys' fees, and costs of court.

Following the trial court's ruling, the Bank filed cross-claims against H & H to recover the deficiency due on the Note in addition to its efforts to seek repayment

2. Burge later added his wife, Linda, as a co-plaintiff. Although Charles Burge is the only party who signed the surety agreement, both Mr. Burge and his wife were listed as plaintiffs/counter-defendants in the proceedings below, and they have filed a joint brief as Appellees in this appeal.

under the guaranties executed by Howard and Howeth. The Bank also sought contribution and indemnity from those defendants for any amount that it would have to pay to the Burges. The Bank filed a motion for summary judgment on its cross-claims against H & H, claiming that Howard and Howeth impaired the loan's collateral by failing to obtain Burge's consent before correcting the Note's maturity date. On March 12, 1998, the trial court granted the Bank's motion for summary judgment, in part, finding H & H liable for the balance due on the Note. The trial court further found that Howeth and Howard were jointly and severally liable for the deficiency owed as "makers and guarantors" of the Note.

H & H then filed counterclaims against the Burges for breach of contract, stemming from Burge's purported "repudiation of his agreement to subordinate the CD to the Note," and for contribution of his "proportionate share" of liability, if any, to the Bank. The Burges filed a motion for summary judgment on the counterclaims asserted against them by H & H, arguing that H & H's new allegations were barred by the statute of frauds, the doctrines of collateral estoppel and res judicata, and principles of equity. The trial court granted the Burges' motion and dismissed H & H's counterclaims.

On December 30, 1998, the trial court entered a "Final Judgment" on the claims covered by the Burges' motion for summary judgment against the Bank, as set out in the May 12, 1997 Interlocutory Judgment, and the Burges' motion for summary judgment against H & H. That order dismissed all claims brought against H & H, Howeth, and Howard by the Burges, originally, because the Burges were deemed to have "obtained all the relief that they sought in this case by the summary judgment against" the Bank. On that same date, the trial court signed the parties' "Agreed Order for Severance" of the claims on which the court had already entered interlocutory judgments, from the claims which remain pending, to date, between the Bank, H & H, Howeth, and Howard. This appeal followed.

### III. Issues Presented

In this appeal, the Bank contends that the trial court erred in granting Burges' motion for summary judgment, and in denying the motion filed by the Bank. The Bank has raised the following issues in support of this contention: (1) there is a genuine issue of material fact on Burge's material alteration defense; (2) Burge consented to the alteration of the Note's maturity date; (3) there is a genuine issue of material fact on Burge's claim that the Bank converted the CD pledged to secure the Note; (4) there was no contract between Burge and the Bank; (5) there is a genuine issue of material fact on Burge's claim that the Bank breached any contract that existed between Burge and the Bank; (6) the summary judgment evidence demonstrates that Burge's claims for material alteration, conversion, and breach of contract fail, as a matter of law, and (7) Burge was not entitled to recover attorneys' fees for the claims on which judgment was granted.

In response, Burge claims (1) the terms of the Note control over those in the security instruments; (2) the Burges' agreement to pledge the CD did not allow the Bank to turn the two-year Note that the CD secured into a "demand note"; (3) the specific terms of the Pledge prohibited the Bank from shortening the Note's maturity date without the Burges' consent; (4) Burge was entitled to rely on the loan documents presented at the closing; (5) there is no conclusive evidence that the Burges waived their material alteration claim; and (6) the Pledge, the transfer of lien, and other documents created a contract between the Burges and the Bank.

H & H contends, in one three-part issue, that summary judgment was improper because genuine issues of fact remain on the following questions: (1) whether the counterclaim against Burge for breach of con-

tract was "barred by the statute of frauds"; (2) whether the counterclaim against Burge for breach of contract was "barred by res judicata and collateral estoppel"; and (3) whether the counterclaim against Burge for contribution was "barred by equity." In addition, H & H argues that a genuine issue of material fact exists on whether the Bank "materially altered the $865,000 Note."

## IV. Standard of Review: Summary Judgment

Here, both the Burges and the Bank filed their motions for summary judgment under Rule 166a(c) of the Texas Rules of Civil Procedure. The standard for reviewing motions filed under this rule "is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law." *KPMG Peat Marwick v. Harrison County Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). Under that standard, this Court must take as true all evidence favorable to the nonmovant and must make all reasonable inferences in the nonmovant's favor as well. *See id.*

■■■■ When a defendant moves for summary judgment on an affirmative defense, it must conclusively prove all the essential elements of its defense as a matter of law, leaving no issues of material fact. *See Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984); *Fernandez v. Memorial Healthcare Sys. Inc.*, 896 S.W.2d 227, 230 (Tex.App.—Houston [1st Dist.] 1995, writ denied). Where, as here, the trial court does not specify the grounds for its granting of a movant's motion for summary judgment, we may affirm the judgment if any of the grounds advanced within the motion are meritorious. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

■■■■ In this instance, the trial court granted two separate motions for summary judgment filed by the Burges, one against the Bank, and one against H & H. The trial court also denied a motion for summary judgment filed by the Bank on the claims raised against it by the Burges. Typically, a party cannot appeal the denial of a motion for summary judgment because it is an interlocutory order and, thus, not appealable. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). However, when both parties move for summary judgment and the trial court grants one motion and denies the other, the unsuccessful party may appeal both the prevailing party's motion as well as the denial of its own. *See Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex.1996); *Cigna Ins. Co. of Tex. v. Rubalcada*, 960 S.W.2d 408, 411–12 (Tex.App.—Houston [1st Dist.] 1998, no pet.). In that situation, we should review the summary judgment evidence presented by both sides, determine all questions presented, and render such judgment as the trial court should have rendered. *See Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex.1997). Accordingly, the issues raised by the parties are discussed separately below.

## V. Material Alteration

It is undisputed by the parties to this appeal that the Note's maturity date was changed from December 28, 1995, to December 28, 1994. Both the Bank and H & H argue that there are genuine issues of material fact which remain for trial on whether that change was a mere correction or was a material alteration. Burge insists that any change to the Note's maturity date was a material alteration as a matter of law and that such a change discharged his liability as a surety.

■■■■ In this case, it is clear that Burge was acting as a surety when he pledged the CD as collateral for H & H's loan. *See, e.g., Simmons v. Compania Financiera Libano, S.A.*, 830 S.W.2d 789, 792 (Tex.App.—Houston [1st Dist.] 1992, writ denied) (holding that, as owners of certain CDs pledged to secure the debt of anoth-

er, the owners "became sureties to the extent that the CDs were pledged"). In Texas, a material alteration will discharge a surety's obligations. *See Vastine v. Bank of Dallas,* 808 S.W.2d 463, 464–65 (Tex.1991). Because a material alteration is an affirmative defense, the burden is on the surety to demonstrate that a material alteration occurred. *See Sonne v. Federal Deposit Ins. Corp.,* 881 S.W.2d 789, 793 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (citing *Federal Deposit Ins. Corp. v. Attayi,* 745 S.W.2d 939, 944 (Tex.App.—Houston [1st Dist.] 1988, no writ).

■ To establish a material alteration, the following elements must be shown: (1) the existence of a material alteration to the underlying contract; (2) lack of consent to the alteration; and (3) harm resulting from the alteration. *See Austin Hardwoods, Inc. v. Vanden Berghe,* 917 S.W.2d 320, 326 (Tex.App.—El Paso 1995, writ denied) (citing *Old Colony Ins. Co. v. City of Quitman,* 163 Tex. 144, 352 S.W.2d 452, 455 (1961)); *Sonne,* 881 S.W.2d at 793; *Attayi,* 745 S.W.2d at 944. The Bank argues that Burge's material alteration defense "fails because the *underlying contract* between *the Bank and H & H* never changed." (Emphasis in original). The Bank maintains further that even if the alteration in the Note's maturity date was material, Burge consented to that change when he pledged the CD. The Bank also argues that the change in the Note's maturity "did not injure or enhance the risk of injury to Burge." Finally, the Bank contends that any material alteration by Burge was waived by his failure to timely complain about the shortened maturity date once he received notice that the Note was due. Each of these contentions is discussed below.

### A. Alteration to the Underlying Contract

■ The test of whether an alteration is material is "whether the altered writing describes the contract entered into by the parties, or whether the instrument's legal effect has been varied." *Spin–Line v. United Concrete Pipe Corp.,* 420 S.W.2d 744, 751–52 (Tex.Civ.App.—Dallas 1967), *aff'd in part, rev'd in part,* 430 S.W.2d 360 (Tex.1968). In that regard, an alteration is material so as to render an instrument void if a change to that document causes it to "fail to reflect the meaning and intent of the parties to the agreement." *Associated Sawmills, Inc. v. Peterson,* 366 S.W.2d 844, 848 (Tex.Civ.App.—Dallas 1963, no writ). Whether an alteration was material is a question of law for the court to determine, and not one for a jury to decide. *See Spin–Line,* 420 S.W.2d at 752.

In this instance, both the Bank and H & H agree that any change to the Note was made for the sole purpose of correcting a clerical error. They insist there was no material alteration to the parties' underlying contract because the agreement between the Bank and H & H was "always a one-year deal." In support, the Bank points to the deed of trust that were executed along with the Note at the December 29, 1993 closing and the terms of the CD that was pledged as collateral.

■ In Texas, a promissory note is "a simple contract governed by the fundamental rules applicable to contract law." *Guthrie v. National Homes Corp.,* 387 S.W.2d 158, 159 (Tex.Civ.App.—Fort Worth), *judgment reformed,* 394 S.W.2d 494 (Tex.1965). In construing a contract, Texas follows the "well established principle that, in order to ascertain the entire agreement between the contracting parties, separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be construed together." *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324, 327 (Tex.1984) (citing *Jones v. Kelley,* 614 S.W.2d 95 (Tex.1981); *Nevels v. Harris,* 129 Tex. 190, 102 S.W.2d 1046 (1937)). Documents executed contemporaneously are construed as one "to ascertain the intent of the parties." *Jones,* 614 S.W.2d at 98.

A review of the relevant loan documents shows that the Note executed at the December 29, 1993 closing was due and owing on or before December 28, 1995, which would have given it a two-year time period to mature. Howeth corrected the Note to reflect that it would mature in one year and that its true maturity date was December 28, 1994. The correction bears Howeth's initials and the Note is likewise initialed by Robert E. Hutson, who supervised the loan on the Bank's behalf. The Note specifically references as "security for payment" the CD pledged by Burge and the deed of trust that was executed along with the Note on December 29, 1993. The deed of trust expressly refers to the Note as "being payable on or before TWELVE (12) MONTHS" from the closing. The CD also plainly states that it will mature one year from the closing. Construing these instruments together, there is evidence that the Note was intended to mature in one year, and not two. *See, e.g., Vista Dev. Joint Venture II v. Pacific Mut. Life Ins. Co.,* 822 S.W.2d 305, 307 (Tex.App.—Houston [1st Dist.] 1992, writ denied) (construing the terms of a note and deed of trust that were executed contemporaneously); *B & B Pharm. & Drug, Inc. v. Lake Air Nat'l Bank of Waco,* 449 S.W.2d 340, 342 (Tex.Civ.App.—Waco 1969, writ dism'd) (construing a loan agreement, note, and deed of trust executed contemporaneously).

The Bank also offers additional, parol evidence which suggests that the Note was intended to mature in one year, and not two.[3] The record reflects that Hutson, Howard, and Howeth each testified in their depositions that the Note was always intended to mature in one year. Howeth added that he corrected the date

without contacting Burge only because he felt sure that Burge knew of the Note's one-year term. The Bank also points out that the loan application, dated December 15, 1993, shows that H & H requested a loan with a twelve (12) month term. The loan worksheet used by the Bank, also dated December 15, 1993, shows that Note's maturity was intended as "1 year."

In response to the Bank's contention, Burge maintains that it was his understanding, at the time of the closing, that the Note was to mature in two years, and not one. Burge contends that the unaltered Note's December 28, 1995 maturity date which he saw at the closing served to confirm that understanding. Burge insists that, if there is any conflict between the Note and the other loan documents, the terms of the Note control. Burge relies on the following cases in support of that contention: *Pentico v. Mad–Wayler, Inc.,* 964 S.W.2d 708, 715 (Tex.App.—Corpus Christi 1998, pet. denied) (citing *Odell v. Commerce Farm Credit Co.,* 124 Tex. 538, 543, 80 S.W.2d 295, 297 (1935)); *Wells v. Smith,* 144 S.W.2d 430, 432–33 (Tex.Civ. App.—Fort Worth 1940, writ dism'd judgm't cor.); and *Southern States Mortgage Co. v. Lykes,* 85 S.W.2d 780, 782 (Tex.Civ.App.—Amarillo 1935, writ ref'd). Burge also points to one Texas case which holds that a bank's alteration of a note's maturity date, even if innocently done, is a material alteration of the type which may discharge a surety. *See Caldwell Nat'l Bank v. Reep,* 188 S.W. 507, 508–09 (Tex. Civ.App.—Amarillo 1916, writ ref'd).

Unlike the cases cited by Burge, the Bank and H & H agree, in this instance, that any change to the Note's maturity date was made solely to correct a clerical

---

**3.** The Burges complain on appeal that the Bank's parol evidence may not be considered, although they did not so object at the trial court. Nevertheless, parole evidence is only inadmissible to vary, alter, or add to the terms of an otherwise unambiguous contract in the absence of fraud, accident, or mistake. *See Messer v. Johnson,* 422 S.W.2d 908, 912 (Tex.1968); *Hartford Ins. Co. v. Commerce &*

*Indus. Ins. Co.,* 864 S.W.2d 648, 650 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Where mistake is alleged, as it is here, parol evidence is admissible to show that the writing incorrectly reflects the true agreement of the parties. *See Estes v. Republic Nat'l Bank of Dallas,* 462 S.W.2d 273, 275 (Tex.1970). Accordingly, the extraneous evidence presented by the Bank may properly be considered.

error so that the Note would reflect accurately the parties' original agreement. For that reason, the authorities that Burge relies upon are distinguishable from the facts present here. Texas courts have held that a change made to a document for the sole purpose of correcting an error of this nature, so as to allow the instrument to accurately reflect the parties' original intentions, is not a material alteration. *See Jackson v. Brackins*, 409 S.W.2d 482, 484 (Tex.Civ.App.—Houston 1966, writ ref'd n.r.e.) (interlineation on a deed to change a party's name from her married name to her maiden name, consistent with the terms of the original agreement, held not to be a material alteration); *Oehler v. Scammel*, 242 S.W.2d 403, 404 (Tex.Civ.App.—Dallas 1951, writ ref'd n.r.e.) (adding a clause to a note after its execution for the sole purpose of including language found in the original agreement not a material alteration); *Continental Cas. Co. v. Bradbury*, 259 S.W. 306 (Tex.Civ.App.—Dallas 1924, no writ) (correcting an insurance policyholder's name from "James A." to "John A." to reflect that "John A. Bradbury" was the true contracting party was not a material alteration); *see also First State Bank v. Keilman*, 851 S.W.2d 914, 920 (Tex.App.—Austin 1993, writ denied) (holding that substitution of the number "2%" for "12.5%" did not alter the legal effect of the note, and was not a material alteration, because that was consistent with the parties' agreement for "prime plus two percent" interest rate). Although none of these cases deal specifically with a promissory note's maturity date, or the relationship between a principal and a surety, their reasoning is persuasive. Here, the Bank and H & H agree that the original contract was for a one-year note to mature on December 28, 1994, consistent with the deed of trust and CD. If true, the alteration merely corrected the Note to reflect that agreement. It is well-settled that "[a]n alteration that works no change, but which leaves the terms of the contract the same as before, does not vitiate it." *Oehler*, 242 S.W.2d at 407 (citing *Wilson v.*

*Weis*, 63 Tex.Civ.App. 255, 132 S.W. 841, 842 (1910, no writ)). If the disputed alteration did not change the legal effect of the underlying contract between the Bank and H & H, then it was not a material alteration of the agreement between those parties as a matter of law.

The conflicting evidence presented by Burge, the Bank, and H & H creates a genuine fact issue about whether the parties intended a one-year note or a two-year arrangement. Although the issue of whether material alteration occurred is a question of law, the precise nature of the underlying contract is one which a jury must decide. *See, e.g., Smith v. Jones*, 638 S.W.2d 17, 21 (Tex.App.—Houston [1st Dist.] 1982), *aff'd in part, rev'd in part*, 649 S.W.2d 29 (Tex.1983) (holding that evidence which showed that the parties may have intended to describe a particular tract of land in a real estate conveyance dispute was a fact issue for the jury to decide). Therefore, because a genuine issue of material fact remains, Burge did not meet his burden to show that he was entitled to a judgment on his defense of material alteration, as a matter of law, and summary judgment was not appropriate. Accordingly, the points raised by the Bank and H & H on material alteration are sustained.

**B. Consent**

The Bank contends, in the alternative, that if the alteration to the Note's maturity date was material, then Burge consented to that change when he signed the Pledge and agreed to tender the $200,000 CD as collateral for the loan. The Bank points out that the Pledge Burge signed expressly incorporates all of the terms of the Security Agreement between the Bank and H & H. The Security Agreement provides as follows:

> The security interest granted hereby shall in no way be affected by any indulgence or indulgences, extension or extensions, *change or changes* in the form, evidence, *maturity*, rate of interest or

otherwise of any of the Obligations secured hereby . . . .

(Emphasis added). The Bank insists that, under this provision, Burge agreed to a "change" of the maturity date, and so he "contractually consented" to the type of alteration at issue here.

Burge responds that language found in the Security Agreement only allows the bank to change the Note's maturity date by extending it, and not shortening it. Burge points to the following provision found in the Pledge that he signed:

[T]he undersigned [Burge] . . . authorizes [the Bank] . . . to renew or extend the time of payment or, or grant any other indulgence concerning, [the Note].

Burge insists that these terms specifically allow the Bank to renew or extend the Note, but that they do not give the Bank the right to shorten its term.

■ The construction of a surety agreement is a question of law for the court to decide. *See Augusta Court Co-Owners' Ass'n v. Levin, Roth & Kasner,* 971 S.W.2d 119, 123 (Tex.App.—Houston [14th Dist.] 1998, pet. denied). In Texas, courts apply the "rule of *strictissimi juris* ('of the strictest right or law') in interpreting guaranty and surety agreements to refrain from extending the guarantor's or surety's obligation by implication beyond the written terms of the agreement." *Id.* (citing *Vastine v. Bank of Dallas,* 808 S.W.2d 463, 464 (Tex.1991)). This rule requires an interpretation that favors the surety. *See id.* Because the Pledge signed by Burge expressly provides for a renewal or an extension of the Note only, a strict construction of that agreement's plain language will not allow for the Bank's interpretation that shortening the time for maturity was also contemplated. It follows that Burge's assent to a shortening of the Note's maturity date cannot be based upon the Pledge that he signed. The issue raised by the Bank on whether Burge "contractually consented" to an alteration on this basis is therefore overruled.

■ The Bank further argues that the Pledge authorized the alteration at issue because, by its terms, Burge granted a security interest in the CD to H & H in order "to secure payment of the Obligations" sustained by H & H. The Bank contends that the term "Obligations" is defined by the Security Agreement to mean the following:

. . . any and all indebtedness and liabilities whatsoever of [H & H] to [the Bank] whether direct or indirect, absolute or contingent, due or to become due, and whether now existing or hereafter arising and howsoever evidenced or acquired, and whether joint or several.

The Pledge further states that H & H had the right to "use and deal with [the CD] or proceeds in like manner as though [H & H] were the sole and absolute owner thereof." The Bank argues that, under the "broad security interest" conveyed in the Pledge, Burge gave H & H "the right to pledge the CD for any indebtedness to the Bank regardless of purpose."

■ The Burges respond that, under the Bank's "broad security interest" theory, the Bank has changed the Note into a "demand" instrument which it could accelerate at will. Under Texas law, "[w]hen an instrument specifies no day of payment it is payable on demand and is construed as containing equivalent words on its face." *Donald v. Bennett,* 415 S.W.2d 450, 453 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n.r.e.). A review of the Note shows that even after its alteration there remained a fixed time for payment by virtue of the December 24, 1994 maturity date. Therefore, the change did not transform the Note into a demand instrument, as the Burges imply.

As for whether the security interest granted to the Bank allowed it to alter the Note without first obtaining Burge's permission, however, Burge's surety agreement, as noted above, remains subject to a strict construction. *See Augusta Court,* 971 S.W.2d at 123 (citing *Vastine v. Bank*

*of Dallas,* 808 S.W.2d 463, 464 (Tex.1991)). A review of the Pledge and the attached Security Agreement shows that neither of these documents contain an express provision allowing the Bank to shorten the Note's maturity without Burge's assent. Under the applicable rule of strict construction, we may not extend the terms of Burge's surety agreement by inferring otherwise. *See id.* (citing *Vastine,* 808 S.W.2d at 464). Constrained as we are by the Pledge and the Security Agreement, which the Bank drafted, we must further strictly construe these documents against the Bank's rather tortured interpretation. *See Temple–Eastex, Inc. v. Addison Bank,* 672 S.W.2d 793, 798 (Tex.1984) (noting that, in Texas, a writing is construed strictly against the drafter). Accordingly, the Bank's issue on whether Burge consented to the alteration by conveying a security interest in the CD is overruled as well.

### C. Injury or Risk of Injury

The Bank argues, in the alternative, that changing the Note's maturity from two years to one year was not a material alteration because that change did not injure or increase Burge's risk of injury but, instead, actually benefitted him. The Bank explains that extending the Note to two years was a greater risk than having a one-year deal, because additional consideration would have been required to obtain such an extension. In the Bank's view, it was beneficial for Burge to be repaid sooner, rather than later.

Separately, H & H contends that Burge was not injured in this instance because he "received exactly what he had bargained for" when he agreed to sell the Property. H & H explains that, instead of agreeing to subordinate the $200,000 promissory note to the necessary construction financing, pursuant to the parties' original agreement, Burge agreed to pledge the $200,000 CD as collateral for the loan. Thus, H & H reasons that, when Burge pledged the CD, he agreed, "just as originally contemplated, to [be] subordinate to the Bank to the extent of $200,000.00."

The Texas Supreme Court has held that if an alteration "can only be beneficial to the surety, [then] the surety is not discharged." *United Concrete Pipe Corp. v. Spin–Line Co.,* 430 S.W.2d 360, 365–66 (Tex.1968). Of course, whether a change is beneficial, or is a detriment, is a fact issue for a jury to determine. *See Federal Deposit Ins. Corp. v. Attayi,* 745 S.W.2d 939, 944 (Tex.App.—Houston [1st Dist.] 1988, no writ). Because the question of whether the shortened maturity date actually helped or harmed Mr. Burge presents a genuine issue of material fact in this instance, the issues raised by the Bank and by H & H are sustained.

### D. Waiver

The Bank contends further that Burge waived his rights with respect to any material alteration that was made because he did not protest the shortened maturity date. In particular, the Bank contends that Burge had notice that the Note had matured and that H & H was in default, but that Burge did not take any action. Burge responds, however, that his silence or inaction are not sufficient to show waiver. Burge argues, therefore, that there is no evidence of waiver in this case.

In Texas, waiver occurs when a party intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *See Tenneco Inc. v. Enterprise Prods. Co.,* 925 S.W.2d 640, 643 (Tex.1996). A party's express renunciation of a known right may establish waiver. *See id.* (citing *Alford, Meroney & Co. v. Rowe,* 619 S.W.2d 210, 213 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.)). Silence or inaction, for so long a period as to show an intention to yield the known right, is also enough to show waiver. *See Tenneco,* 925 S.W.2d at 643. However, it is well established that waiver turns on the question of intent. *See Texas Workers' Compensation Ins.*

*Facility v. Personnel Servs., Inc.*, 895 S.W.2d 889, 894 (Tex.App.—Austin 1995, no writ) (citing *Ford v. Culbertson*, 158 Tex. 124, 308 S.W.2d 855, 865 (1958)). Whether waiver has occurred is therefore ordinarily a question of fact for a jury to decide. *See Tenneco*, 925 S.W.2d at 643.

Here, the Bank presented evidence that Hutson, the supervising loan officer, left a telephone message for Burge on January 24, 1995, regarding the Note. In his deposition, Burge acknowledged that he later spoke with Hutson who told him that the Note "had matured." On February 6, 1995, Howeth sent a letter to Burge "to confirm in writing that our construction loan to which you have Certificates of Deposit pledged as additional collateral is in default." The letter specifically states that the Note "matured on December 28, 1994, and has not been renewed." On June 5, 1995, the Bank sent a letter to Burge's counsel to notify Burge of the default and to give him an opportunity to cure H & H's failure to pay. That letter references other correspondence between the Bank and Burge, on March 9, 1995, in which the Bank furnished Burge with a variety of documents regarding the default. The Bank argues that this evidence shows that Burge never protested the December 28, 1994 maturity date or complained that the date was different from his understanding.

Based on the foregoing evidence, we find that there is a genuine issue of material fact on whether Burge waived his right to claim material alteration. Because this issue is one for a jury to decide, that question is one which should be remanded to the trial court for further determination. *See Tenneco*, 925 S.W.2d at 643; *Ford*, 308 S.W.2d at 865. The Bank's point of error on the issue of waiver is sustained to this extent.

### VII. Conversion

█ The Bank contends that it was also error for the trial court to deny its motion for summary judgment on Burge's claim for conversion. Conversion is defined as "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Bandy v. First State Bank, Overton, Tex.*, 835 S.W.2d 609, 622 (Tex.1992) (citing *Tripp Village Joint Venture v. MBank Lincoln Centre, N.A.*, 774 S.W.2d 746, 750 (Tex.App.—Dallas 1989, writ denied)). If there was no material alteration in this case, then the Bank's foreclosure could not have constituted conversion because its exercise of dominion and control would not have been wrongful. For the reasons set out above, genuine issues of material fact remain on whether a material alteration occurred with regard to the Note. Because this fact issue affects whether the Burges could prevail on their conversion claim, the Burges were not entitled to summary judgment on their cause of action for conversion, and the Bank's point of error on that issue is sustained.

### VIII. Breach of Contract Between Burge and the Bank

█ In his motion for summary judgment, Burge argued that the Pledge he signed was based upon a separate agreement that the Note would mature in two years. Burge complained that the Bank breached that agreement with him by changing the Note's maturity date from two years to one. The Bank argues that Burge cannot establish that he had a separate contract with the Bank, as a matter of law.

█ The essential elements in a breach of contract claim are as follows: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach. *See Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex.App.—Houston [1st Dist.] 1995, no writ). Here, the Bank contends that there is no valid contract because there is no evidence of any written document signed by Burge which sets out the supposed "two-year maturity require-

ment." The Bank argues therefore that Burge's breach of contract claim is barred by the Statute of Frauds.

The Statute of Frauds is found in § 26 of the Texas Business and Commerce Code. The applicable provision states, in pertinent part, the following:

(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

▉▉▉▉ Subsection (a) of this section applies to:

. . .

(6) an agreement which is not to be performed within one year from the date of making the agreement.

Tex. Bus. & Com.Code Ann. § 26.01(a), (b)(6) (Vernon 1987). To satisfy the Statute of Frauds, "there must be a written memorandum which is complete within itself in every material detail and which contains all of the essential elements of the agreement so that the contract can be ascertained from the writing without resorting to oral testimony." *Dobson v. Metro Label Corp.,* 786 S.W.2d 63, 65 (Tex.App.—Dallas 1990, no writ) (citations omitted). Absent such a writing, an oral agreement falls within the Statute of Frauds if it appears from the terms of the agreement that performance cannot be completed within one year. *See International Piping Sys., Ltd. v. M.M. White & Assoc., Inc.,* 831 S.W.2d 444, 451 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (citing *Hall v. Hall,* 158 Tex. 95, 308 S.W.2d 12, 14 (Tex.1957)). Whether an agreement falls within the Statute of Frauds is a question of law. *See Gerstacker v. Blum Consulting Eng'rs,*

*Inc.,* 884 S.W.2d 845, 849 (Tex.App.—Dallas 1994, writ denied) (citations omitted).

In this instance, Burge argues that the Pledge, the transfer of lien, and other documents related to the transaction created a contract between ˙Burge and the Bank.[4] However, Burge points to no written agreement with the Bank which is "complete within itself" and which details a requirement that the Note mature in two years. *See Dobson,* 786 S.W.2d at 65. It is further plain that any such oral agreement requiring a two-year term of maturity for the Note could not have been completed within one year. Therefore, the Statute of Frauds applies to bar the alleged two-year maturity agreement described by Burge. *See* Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(6). Accordingly, the Burges' issue on whether the series of closing documents signed by the parties created such a contract is overruled, and the Bank's point of error on this issue is sustained. Furthermore, because we have concluded that no valid contract existed between the Bank and the Burge's as a matter of law, we render judgment that the Burge's take nothing on their breach of contract claim.

## IX. Attorneys' Fees

In granting Burge's motion for summary judgment, the trial court awarded "reasonable attorneys' fees" without stating any basis for doing so. The Bank contends that, although Burge raised a breach of contract claim, this action was added merely as an attempt to collect attorneys' fees under § 38.001 of the Texas Civil Practice and Remedies Code, which allows a prevailing party to recover those fees in such a suit. *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8). The Bank claims that, because the Burges' breach of contract claim fails as a matter of law, there is no authority to support the award of attorneys' fees. We agree. Because we have

---

**4.** At oral argument, the Burges also suggested that the CD was a written contract breached by the Bank. A review of the record in this case shows, however, that this allegation was not raised in the trial court and therefore we may not address it.

concluded that the Burges' breach of contract suit against the Bank, if any, is barred by the Statute of Frauds, the Burges cannot prevail on that claim and they are therefore not entitled to an award of attorneys' fees under Texas Civil Practice and Remedies Code § 38.001. Because there is no other support for an award of attorneys' fees in this case, the Bank's issue on this point is sustained.

## X. Breach of Contract Between Burge and H & H

■ H & H filed a counterclaim against Burge for breach of his agreement to pledge the CD as security for the loan. In his motion for summary judgment, Burge argued that the breach of contract claim lodged against him by H & H is barred by the suretyship provision of the Statute of Frauds. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(2). Under this provision, when a party such as Burge is acting as a surety, "the promise to pay the debt of a third party is required to be in writing" and signed by the surety. *See id.; see also Carter v. Allstate Ins. Co.*, 962 S.W.2d 268, 269 (Tex.App.—Houston [1st Dist.] 1998, pet. denied).

■ In this case, H & H has no written agreement to act as a surety that is signed by Burge. H & H points out, however, that by signing the Pledge Burge fully performed his oral agreement to pledge the CD. It is well settled Texas law that the Statute of Frauds does not apply to a fully executed contract. *See Pou v. Dominion Oil Co.*, 265 S.W. 886, 888 (Tex. Com.App.1924); *see also 626 Joint Venture v. Spinks*, 873 S.W.2d 73, 76 (Tex. App.—Austin 1993, no writ); *Estate of Kaiser v. Gifford*, 692 S.W.2d 525, 527 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Because Burge performed his oral promise by executing the Pledge and tendering the CD as collateral for the loan, the Statute of Frauds is unavailable to him in this instance. H & H's point of error on whether the Statute of Frauds

barred its breach of contract claim against the Burges is therefore sustained.

## XI. Collateral Estoppel and Res Judicata

Burge's motion for summary judgment also argued that H & H's counterclaim for contribution was barred under the "doctrine[s] of collateral estoppel or res judicata" by the trial court's Interlocutory Judgment in Burge's favor, and against the Bank, on Burge's material alteration defense. Burge reasoned that, because the trial court found that "the Bank's material alteration of the [N]ote relieved Burge from any obligation," H & H is collaterally estopped from asserting a contribution claim against him.

■ H & H correctly observes that both collateral estoppel and res judicata require a final judgment. *See Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex.1991). In particular, the doctrine of res judicata requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996). Likewise, "[a] prior adjudication of an issue will be given estoppel effect only if it was adequately deliberated and firm." *Mower*, 811 S.W.2d at 562. That determination requires a showing that (1) the parties were fully heard; (2) the court supported its decision with a reasoned opinion; and (3) the decision was subject to appeal or was in fact reviewed on appeal. *See id.* A review of the Interlocutory Judgment shows, on its face, that it was not a final one. Under the foregoing analysis, the Interlocutory Judgment entered by the trial court on May 12, 1997, was not entitled to collateral estoppel or res judicata effect. H & H's issue on whether its claim for contribution against the Burges was barred by the doctrines of collateral estoppel and res judicata is therefore sustained.

## XII. Equity

■ In their motion for summary judgment, the Burges simply argued that it would be "grossly inequitable, as a matter of law, for Howeth and Howard to receive contribution from the Burges when the acts of the company they controlled were the primary cause of the default of the Construction Note and when they consented to the material alteration" of that document. In response, H & H points out that Burge is an experienced real estate professional who agreed to pledge the CD as collateral to secure the loan. H & H argues therefore that equity does not relieve Burge of his obligation to act as surety in this case.

■ Equity invokes the "court of conscience," and it applies only when "the legal remedy is not as complete as, less effective than, or less satisfactory than the equitable remedy." *First Heights Bank, FSB v. Gutierrez,* 852 S.W.2d 596, 605 (Tex.App.—Corpus Christi 1993, writ denied). In that regard, relief in equity is not available where there is a complete and adequate remedy at law. *See Rogers v. Daniel Oil & Royalty Co.,* 130 Tex. 386, 110 S.W.2d 891, 894 (1937). Burge has not demonstrated that he is entitled to equitable relief in this instance and, therefore, H & H's point of error is sustained.

## XIII. Conclusion

Based on the foregoing, we find that the trial court erred in granting summary judgment in the Burges' favor against both the Bank and H & H. We reverse and render judgment that the Burge's take-nothing on their contract claim and their claim for attorneys' fees. The remaining causes of action are reversed and remanded to the trial court for additional proceedings consistent with this opinion.

RICHARD H. EDELMAN, Justice, concurring and dissenting.

With regard to the Burges' claim for breach of contract against the bank, the majority opinion reverses the summary judgment granted for the Burges and renders summary judgment for the bank on the basis that the documents signed by the parties did not create a contract that the Burges could enforce against the bank. However, logic would suggest that to whatever extent those documents created a contract that the bank could enforce against the Burges to foreclose on their CD, those same documents thereby also created a contract that the Burges could enforce against the bank if its foreclosure on the CD did not comply with the contract, such as by being premature. As the remainder of the majority opinion correctly concludes, a fact issue exists regarding whether the parties intended a one-year or two-year note. The resolution of that question will, in turn, determine whether the contract between the bank and the Burges allowed the CD to be foreclosed upon after one year or two and, thus, whether it was the bank or the Burges who were in breach of that contract. Therefore, I would merely reverse the summary judgment in favor of the Burges, including the award of attorney's fees, due to the fact issue regarding the term of the note and not render judgment in favor of the bank.